**MacLAUGHLIN et al. v. UNION SWITCH & SIGNAL CO.**

**BORLAND et al. v. WESTINGHOUSE AIR BRAKE CO.**

Civil Actions Nos. 6116, 6117.

District Court, W. D. Pennsylvania.
March 27, 1947.

Olbum & Libson and Sylvan Libson, all of Pittsburgh, Pa., for plaintiffs.

Thorp, Bostwick, Reed & Armstrong, Earl F. Reed, Donald W. Ebbert, and Joseph E. Madva, all of Pittsburgh, Pa., for defendants.

GIBSON, District Judge.

The defendant in each of the above mentioned actions has moved to dismiss the action, asserting that the complaint fails to state a claim upon which relief can be granted.

As the claims present substantially parallel causes of action, the two cases are considered together.

The complainants in each case were World War II veterans who returned to their employment with the defendants within the statutory period of ninety days after discharge from the service of the United States.

William MacLaughlin had more than five years service with Union Switch & Signal Company when he entered the military service on September 17, 1942, and was discharged on December 21, 1944. He returned to his employment with the Company on January 3, 1945. On his behalf it is asserted that the Company, under the contract between it and Local 610, United Electrical Radio and Machine Workers of America, CIO (of which he was a member), was required to allow him two weeks vacation with pay in the calendar year 1943, and a like vacation with pay in the year 1945. The total amount of the vacation benefits claimed as unpaid by William MacLaughlin for the two years was the sum of $246.85.

The plaintiff, James T. Hannon, had more than two years service with Union Switch & Signal Company when he entered

the military service on December 12, 1943. He returned to his employment with the company in April, 1946. Under the same contract mentioned supra, plaintiff Hannon alleges that he was entitled to one week of vacation with pay in the year 1944, and, having more than five years service with the Company after his return to the Company in April, 1946, he was entitled to two weeks vacation in the year 1946. The total amount claimed as unpaid by the Company was $152.16.

The plaintiff, Clarence Conn, had more than two years service with the Union Switch & Signal Company on December 22, 1943, when he entered the army, was discharged from the military service on December 21, 1945, and returned to employment with the Company on January 27, 1946. He claims one week of vacation with pay in the year 1944, and a like one week's vacation in 1946. The total amount claimed was $105.75. . His vacation claim is also based upon the contract with Local Union 610.

Norris Borland, Robert E. Wilding and Robert F. Borgo are complainants in the action against The Westinghouse Air Brake Company, Civil Action No. 6117. All of them are members of Local 610, United Electrical Radio and Machine Workers of America, CIO, and each of them bases his claim upon the contract between Westinghouse Air Brake and that Labor Union under which he asserts that Westinghouse Air Brake Company was required to allow him a vacation with pay.

Norris Borland had been in the employ of the defendant for more than five years when he entered the military service on October 3, 1942. He was discharged on October 8, 1945, and resumed employment with defendant on October 18, 1945. He claims a vacation of two weeks with pay in the calendar year 1943 and a like vacation in the year 1945, the total amount of the unpaid vacation allowance being $287.45.

Complainant Robert E. Wilding entered the military service in May of 1944, and was discharged on March 10, 1946. He had been employed by the defendant for four years when he entered the military service, and returned to its employment on May 21, 1946. He asserts that he was entitled to a vacation of one week in the year 1945, and for two weeks in 1946. The total amount of his vacation pay, earned but unpaid as he avers, was $156.07.

Robert F. Borgo started work with the Westinghouse Air Brake Company on December 24, 1941, and had been employed eight months when he entered the military service on August 23, 1942. He was discharged on January 6, 1946, and resumed his employment with defendant on February 4, 1946. He claims the right to a vacation with pay for one week in the year 1943, and for a like vacation in 1946. The total amount claimed was $106.86, which is unpaid.

Each complainant in both actions has based his right to recover upon the contract of his Union, Local 610, with the defendants and Section 8 of the Selective Service and Training Act of 1940, 50 U.S.C.A. Appendix, § 308.

Section 8 of the Selective Service and Training Act declares, in substance, that any person who has left his employment to perform military and training service who makes application for reemployment within ninety days after his discharge, shall be restored to his position or to a position of like seniority, status and pay. Subsection (c) of said Act is as follows:

"(c) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) shall be considered as having been on furlough or leave of absence during his period of training and service in the land or naval forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration."

To the complaints the plaintiffs have attached as Exhibits A, B and C, copies of the Agreement between the defendants and United Electrical Radio and Machine Work-

ers of America, Local 610, being respectively copies of the agreements of June 16, 1942, December 17, 1943, and January 1, 1946. The agreements of January 1, 1946, and December 17, 1943, read as follows in respect to vacations:

## "Article VII

### "Vacations

"Section 1. Employees on the Company's roll during the current calendar year are eligible for vacation with pay based on their total service with the Company to and including December 31 of the preceding calendar year, excluding any service prior to a quit or discharge.

"Section 2. Employees with one (1) or more, but less than five (5) years' service shall be allowed a vacation of one (1) week, and employees with five (5) years' or more service shall be allowed a vacation of two (2) weeks.

"Section 3. The vacation pay for each week of vacation shall be computed by multiplying the average weekly hours worked by all employees in the preceding calendar year by the individual's average earned rate per hour in the preceding calendar year.

"Section 4. Employees with less than one (1) year's service shall be allowed a vacation of one (1) day for each three (3) months' service, with vacation pay computed on the basis of one-fifth of one (1) week's vacation pay for each day of vacation.

"Section 5. Vacations can be taken only during the current calendar year."

The agreement of June 16, 1942, is the same as those quoted supra, except the fifth section is attached to Section 1 at its foot.

It will be noted that the complainants in both actions have not recited in support of their claims any "established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces" as set forth in Section 8 (c) of the Selective Service and Training Act, other than those of Article VII in each of the contracts mentioned supra. They could not have set forth any varying rules and practices, because the contracts with the Union had crystallized the vacation rules and practices of the employer at the time the plaintiffs were inducted into the military service.

Keeping in mind that the contracts of the defendants with the Union provided that vacations could be taken only during the current calendar year (Section 5), and that employees on the defendants' pay rolls during that year are eligible for vacation based on their total services *to and including December 31 of the preceding calendar year, excluding any service prior to a quit or discharge* (Section 1), it is plain that no one of the plaintiffs can claim the Union contract as a support to his action.

In the Union Switch & Signal Company case, No. 6116, the plaintiff, William MacLaughlin, who claims vacation pay for the years 1943 and 1945, was not in the service of the Company on December 31 of either of the years 1942 or 1944, having been released from his military service on January 3, 1945, and having been inducted therein on September 17, 1942. In the same case the plaintiff James T. Hannon was inducted into the military service on December 12, 1943, and discharged April 19, 1946. He claims a week in 1944 and two weeks in 1946, but was not in the service of the Company on December, 31 of either 1943 or 1945. And the other plaintiff, Clarence Conn, was inducted on December 22, 1943, and discharged on January 27, 1946. He claims vacation pay for a week in 1944 and for a week in 1946, but was not in the Company's service on either December 31 of 1943, 1944 or 1945.

In the Westinghouse Air Brake Company action (No. 6117), Norris Borland was inducted on October 3, 1942, and discharged on October 18, 1945. He claims vacation pay for two weeks in both 1943 and 1945, but was not on the Company's pay roll on December 31, 1942, or on the same date in 1944. Robert E. Wilding was inducted in May of 1944 and discharged May 21, 1946. He claims one week in 1945 and two weeks in 1946, but was not on the Westinghouse pay roll on December 31 of either the year 1944 or 1945. The plaintiff Robert F. Borgo was inducted on August 23, 1942, and discharged on February 4, 1946. He claims pay for one week in each of the years 1943 and 1946, despite the fact that he was not

on the pay roll on December 31 of either the year 1942 or 1945.

The claims of the plaintiffs in the above entitled actions are based upon their interpretation of the Selective Service Act. They parallel their vacation rights with the defendants to the seniority rights conferred by the Act. In effect it is claimed that each plaintiff is to be regarded as being on the pay roll of the defendant during the time he was actually in the military service. In other words, as his seniority rights were not lost by his service so also were his vacation rights preserved. Carried to its logical conclusion, the plaintiffs' contentions should go to the extent of claiming full pay from defendants while they were in the army, but even plaintiffs have not gone to that extent in their claims.

Counsel for plaintiffs have placed great reliance upon the following general language used by Mr. Justice Douglas in Fishgold v. Sullivan Corp., 328 U.S. 275, 285, 66 S.Ct. 1105, 1111:

"This legislation is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need. * * * And no practice of employers or agreements between employers and unions can cut down the service adjustment benefits which Congress has secured the veteran under the Act. Our problem is to construe the separate provisions of the Act as parts of an organic whole and give each as liberal a construction for the benefit of the veteran as a harmonious interplay of the separate provisions permits."

This language was used in an opinion in which the Supreme Court denied the claims of a defendant who claimed the right to employment as against employees of greater seniority when it was necessary to temporarily lay off some of the employees. Arguing from the language quoted, counsel for plaintiffs contend that a liberal construction of the Selective Service Act will justify judgments in their favor.

Admitting that some courts have widened, not to say stretched, the language of the Act to include matters not readily apparent to the casual reader, we know of none which has put "interpretation" in place of the language of the Act. In Section 8 (c) of the Act (quoted supra) the following appears: " * * * shall be entitled to participate in insurance or other benefits offered by the employer *pursuant to established rules and practices relating to employees on furlough or leave of absence* in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position *without cause within one year after* such restoration." It cannot be disputed that the rules and practices of the employer relative to vacations were prescribed by Article VII of the contract with Union 610. Plaintiffs have undertaken to cite no "established rules and practices relating to employees on furlough or leave of absence" other than the contract with Union 610. In fact they in part have based their complaint upon it. Nothing in either the Selective Service Act or the Union 610 contract calls for a "liberal construction." Any attempt in that direction would be shocking to common sense, as neither the Act nor the contract presents the slightest doubt as to its meaning.

The motion of the defendant, in each action, to dismiss the complaint must be granted.