## HUFFMAN et al. v. NORFOLK & WESTERN RY. CO. et al.

### Civ. A. No. D-171.

District Court, W. D. Virginia, at Roanoke.

May 3, 1947.

Edwin M. Young, of Roanoke, Va., for plaintiffs.

Whitwell W. Cox, Stuart T. Saunders and Leonard G. Muse, all of Roanoke, for defendant N. & W. R. Co.

BARKSDALE, District Judge.

This is an action instituted under the provisions of Section 8 of the Selective Training & Service Act of 1940, 50 U.S. C.A.Appendix, § 308, by seven veterans of World War II, who now are, and prior to their entry into military service were, employees of the defendant, Norfolk & Western Railway Company. After the institution of the action, two of the plaintiffs, at their own request, were permitted to withdraw from the action. All of the plaintiffs, prior to their entry into military service, were, and now are, record clerks in the Car Service Department of the Railway. All of the plaintiffs, upon their applications after discharge from military service, were promptly restored to their former positions by the Railway, at salaries greater than they were receiving when they entered the military service. However, conceiving that they were entitled to greater pay, the plaintiffs and a number of others similarly situated presented the claims which plaintiffs assert in this action to Selective Service Headquar-

ters. Upon consideration of the claim of one Broadwater (an original plaintiff who was allowed to withdraw from this action), which was typical of all the claims, State Headquarters of Selective Service concluded, "that the veteran does not have a valid claim.", and so advised plaintiffs' Local Board. Thereupon, plaintiffs did not apply to the United States Attorney, as they had a right to do under the Act without cost to them, but employed private counsel and instituted this action.

Defendant has filed its motion, and amended motion for a summary judgment, with supporting affidavits and depositions: plaintiffs have filed objections to such motion, with affidavits and depositions in support of their objections. Briefs have been filed, both in support of and in opposition to defendant's motion, and oral argument of counsel has been heard by the court.

I am satisfied that there is no genuine issue as to any material fact, and that the defendant Railway is entitled to a judgment as a matter of law. An order to that effect will be entered dismissing the complaint. Under such circumstances, I am not required under Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, to make findings, but I will briefly state the reasons for my conclusions.

It is conceded that the plaintiffs, when they entered the military service, left positions, other than temporary, that they satisfactorily completed their periods of training and service, that being still qualified to perform the duties of their former positions, they were restored to such positions, which they still hold, with full seniority, including the time they spent in service, with like status, and with increased pay by reason of their having the benefit of general wage increases. The crux of the matter is that the plaintiffs complain of what is known as the "Step-Rate" system, and its application to them. In order to understand plaintiffs' contention, it is necessary to understand the "Step-Rate" system, which I shall presently undertake to explain.

Early in 1920, a dispute arose between railroad employees and three hundred and fourteen railroads including the Norfolk & Western, relative to their rates of pay. Pursuant to the Transportation Act of 1920, 49 U.S.C.A. §§ 1 et seq., 71 et seq., this dispute was submitted to the United States Railroad Labor Board for decision. One of the issues was the rate of compensation of clerical employees. On July 20, 1920, the Board rendered its decision (US RLB Decisions, Vol. 1, p. 13), in which it found the clerks with less than one year's experience in railway clerical work or clerical work of a similar nature in other industries, were to receive less pay than those possessing more than one year's experience. In 1921, the period was increased from one to two years. In February 1930, the Norfolk & Western Railway entered into an agreement with the collective bargaining agent for its clerical employees, wherein it was agreed that the period should be increased to three years. In October, 1942, it was agreed that credit, up to two years, should be given for time spent in an accredited college or business college. It was subsequent to the last-mentioned amendment that the plaintiffs entered military service. No change in the system took place while plaintiffs were in military service. In operation, the system provides for certain steps, or periods of time, during which a clerical employee is compensated at an ascending rate of pay. Thus, I suppose, the term "Step-Rate" was derived from the system of "steps" and "rates" of pay. As presently in operation, the steps and rates are as follows, and such steps were the same when the plaintiffs left the employment of the Railway to enter military service, the present rates, however, being greater by reason of the general increases mentioned above:

The first step, six months, rate of pay— $155. (Cents omitted)

The second stop, six months, rate of pay —$163.

The third step, one year, rate of pay— $183.

The fourth step, one year, rate of pay— $192.

Thereafter, the rate becomes $196, and so continues for home record clerks.

Since the inception of the Step-Rate plan, the only possible way for an employee to ascend from one step to another, has been by experience, normally, by actual active employment with the Railway in clerical work. It has been noted that credit could be obtained by clerical work in other industries, or college training. Besides, the Railway adopted the policy of giving credit to those employees who went into military service for any time spent by them in clerical work in the military service. Three of the plaintiffs have received credit in the Step-Rate system for clerical assignments while in the military service. Since the inception of the Step-Rate system, it has been the invariable rule that employees received no credit under this system for vacation time, furloughs, leaves of absence, lay-offs, or time spent in the employ of the Railway in positions other than clerical. Thus, it will be seen that progress in the Step-Rate system does not depend upon mere lapse of time or upon time spent in the employ of the Railway, but it depends upon actual experience obtained in clerical employment.

■ The Step-Rate system, as will be clearly observed, is something entirely separate and distinct from seniority. Seniority begins when an employee's pay begins, and continues so long as he is in the employ of the Railway, regardless of whether he be laid off, on vacation, or, by the terms of the Selective Training and Service Act, 50 U.S.C.A.Appendix, § 301 et seq., in the military service. It results in certain preferential treatment of employees based upon their length of service. In its application to a home record clerk, such as plaintiffs were, if it became necessary to lay off three such clerks by reason of slack work, the three who were lowest on the seniority list would be the three who were laid off. Similarly, if these three employees were called back to work, one by one, the one with the greatest seniority would be called first and the one with the least seniority would be called last. So also, if a vacancy arose in the better position of foreign record clerk, the home record clerk with the greatest seniority would be offered the better position. Either lay-off or advancement would depend entirely upon seniority, without reference to the Step-Rate system. In the sense that I have indicated, there is no question that all the plaintiffs have been restored to their full seniority rights.

■ However, plaintiffs contend that because progress in the Step-Rate system follows the accomplishment of each period or step, without examination or other test of efficiency, that the resultant increases in pay are automatic with the passage of time, and therefore the Step-Rate system and seniority are synonymous, and that the mandate of the statute requiring that veterans be credited with time spent in military service, in the matter of seniority, requires also that the plaintiffs be given credit in the Step-Rate system for their time spent in military service. To my mind, merely to state this contention, is to refute it. The simple fact is that progress in the Step-Rate system is solely and only based on clerical experience or college training. Plaintiffs have been given credit for every day spent by any of them in clerical work in military service. Time otherwise spent in military service, however praiseworthy it may be, is not clerical experience, and I can find nothing in the statute requiring, or even justifying, that it be so considered.

The duties of the home and foreign record clerks in the Railway's Car Service Department are to trace and record, from day to day, the movements of defendant's 59,782 freight cars on its own and other lines and the movements of approximately 7,700 freight cars of other railways on defendant's lines. This is, of course, important work, because a large, probably the major, part of defendant's income derives from the movement of freight cars. Plaintiffs contend that because all the record clerks in the Step-Rate system do similar work, experience is no criterion, and progress in the Step-Rate system should be considered as depending solely on the passage of time rather than the acquisition of experience. The idea that experience increases the efficiency of an employee, and therefore his value to his employer, is certainly not novel. It certainly permeates

the government service. Clerical employees in the judicial system receive periodic increases solely on the basis of experience, where their services are certified as satisfactory.

Plaintiffs' counsel also contends that the Step-Rate system is unfair because the beginners, as he contends, are as efficient as those employees with three years' experience. I cannot agree with counsel in this contention. But certainly I can find no discrimination against veterans in the system, nor any failure on the part of the Railway to give these plaintiffs and others similarly situated every right to which they are entitled under the Selective Service Law. The system is the result of decisions of the Railway Labor Board, and of collective bargaining between the Railway and the collective bargaining agency of the clerical employees. It was effective and in operation when these plaintiffs became employees of the Railway, when they entered military service, and when they returned, without any change material to this controversy. Certainly, it would be entirely beyond the ambit of my authority to disregard it, under the circumstances here presented.

The precise question presented in this case is novel, so far as I am able to ascertain. Of course, there have been numerous decisions interpreting and applying Section 8 of the Selective Service Law. Their general trend is to treat the veteran not only fairly, but generously, and I am in full accord with this policy. However, I can see no justification for requiring the Railway here, or any other employer, to give increases of pay to veterans, to which they are not entitled, either in equity and good conscience, or by the provisions of the Selective Service Law.

Somewhat analogous to the contention here made were the contentions made in the cases of Dwyer v. Crosby Co., D.C., 69 F.Supp. 384, and McLaughlin v. Union Switch & Signal Co., D.C.W.D.Pa., 1947, 70 F.Supp. 744, where the veterans made claims for vacation pay during the years when they were absent in military service. In both instances, such claims were denied.

Plaintiffs' counsel cites numerous cases holding that veterans on their return are entitled not only to their former positions, with accumulated seniority, but to all wage or salary increases which may have accrued to such positions. Such cases have no bearing here because here the Railway has restored plaintiffs to their former positions, with full seniority, and has given them the benefit of all general pay increases.

So far as I know, the question of the construction and application of Section 8 of the Selective Service Act has been considered by the Supreme Court in only two cases, which are Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S. Ct. 1105, 90 L.Ed. 1230, and Trailmobile Co. v. Whirls, 67 S.Ct. 982. Neither of these cases is controlling here, or even analogous. However, there are two expressions in the Fishgold case, one of which is repeated in a footnote to the Whirls case, upon which plaintiffs' counsel seems to place his greatest reliance. These expressions from the Fishgold case are:

"He [the veteran] shall be 'restored without loss of seniority' and be considered 'as having been on furlough or leave of absence' during the period of his service for his country, with all of the insurance and other benefits accruing to employees on furlough or leave of absence. § 8(c). Thus he does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war." 328 U.S. 284, 66 S.Ct. 1111, and—

"As we have said, these provisions guarantee the veteran against loss of position or loss of seniority by reason of his absence. He acquires not only the same seniority he had: his service in the armed services is counted as service in the plant so that he does not lose ground by reason of his absence." 328 U.S. 285, 66 S.Ct. 1111.

Of course, both of these statements relate to *seniority*. However, plaintiffs' counsel seeks to carve out of the second statement that part which says, "his service in the armed services is counted as service in the plant so that he does not lose ground by reason of his absence.",

and make it applicable to the Step-Rate system, although the earlier part of that very sentence, "He acquires not only the same seniority he had;", makes it obvious that the latter part of the sentence refers only to seniority. Under modern conditions of employment, seniority is an extremely valuable right, and it is easily understandable that Congress should be alert to safeguard veterans in this particular. However, I find nothing in the Act to require, or even justify, the consideration of non-clerical military duty as clerical experience. It seems to me that plaintiffs' contention that the part of the sentence quoted above should be disconnected from its context and literally construed, quickly leads to a reductio ad absurdum, because if, for all purposes, "his (the veteran's) service in the armed services is counted as service in the plant * * *", it seems obvious that a contention that such veteran was entitled to full pay from his employer for all the time spent in military service would be equally as tenable.

It seems to me that the following provision of Section 8(c) of the Act is most applicable: "Any person who is restored to a position * * * *shall be considered as having been on furlough or leave of absence during his period of active military service,* shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to *employees on furlough or leave of absence* in effect with the employer as the time such person was ordered into service * * *." (Italics mine.)

And see Fishgold v. Sullivan &c. Corp., supra, 328 U.S.P. 284, 66 S.Ct. 1111: "He shall be 'restored without loss of seniority' and be *considered 'as having been on furlough or leave of absence'* during the period of his service for his country, with all the insurance and other benefits accruing to employees *on furlough or leave of absence.* § 8(c)." (Italics mine.)

The Railway has promptly restored these plaintiffs to their former positions with accumulated seniority, giving them the benefit of all general pay increases which accrued to their positions during their absence, and their progress in the Step-Rate system has been precisely what it would have been if they had been on furlough or leave of absence. The Railway has fully and fairly discharged its duty to these plaintiffs, and they have no just cause for complaint.