**ZAVERSNIK et al. v. UNION PAC. R. CO. et al.**

Civ. A. No. 3139.

United States District Court
D. Wyoming.

May 9, 1949.

John C. Pickett, U. S. Atty., and John S. Miller, Asst. U. S. Atty., Cheyenne, Wyo., for plaintiffs.

John U. Loomis, of Cheyenne, Wyo., and R. B. Hamer and John J. Burchell, Omaha, Neb., for defendant Union Pac. R. Co.

James O. Wilson, of Cheyenne, Wyo., and Richard R. Lyman of Toledo, Ohio (Mulholland, Robie & McEwen, of Toledo, Ohio, of counsel), for intervening defendants.

T. BLAKE KENNEDY, District Judge.

This is a suit brought under the Selective Training and Service Act of 1940, Title 50, U.S.C.A.Appendix, §§ 301 to 308, in which it is sought to require the defendant Union Pacific Railroad Company to restore the plaintiffs to the position of carmen as of the date which they would have completed their 1160 days of employment as temporary carmen had they not entered the military service of the United States. The suit is being presented by the United States Attorney at the request of the plaintiffs, without cost to them, under the provisions of the Act.

The action was originally brought against the Railroad Company but on application to the Court the labor organiza-

tion to which all the individuals here concerned belong was permitted to intervene on its own behalf and particularly those members of the labor organization who would be adversely affected as to their seniority should the plaintiffs prevail. Issues were accordingly joined and the case was tried to the Court without the intervention of a jury and at the suggestion of counsel the Court permitted the issues to be submitted upon trial briefs to be filed by counsel. The last brief having been filed on April 22nd, the matter is now ready for consideration by the Court.

The actual facts underlying the litigation are not seriously in dispute so that the Court will not burden this memorandum with a specific detail as to the individual status of each plaintiff or the respective status of each individual of the intervening defendants as this may be left for inclusion in the findings of fact, if counsel should regard it as essential, together with such other jurisdictional and fundamental facts as may be material in supporting the conclusions of the Court. Suffice it to say that for the purposes of this memorandum, a sketch of the basic facts is that the plaintiffs, under the bargaining agreement between the railroad and the Federation which represented them, dating from November 1, 1934, were carried upon the rolls of the railroad company as "carman-helpers". They were subsequently, at various times, called into the service during the late war while carrying their respective seniority in the class above mentioned. At various times they had been elevated, or eligible to be elevated to the position of temporary carmen when eligible carmen who had through actual service justified their eligibility as carmen and had been granted that classification were not available, which classification included those who had served the actual required time or were otherwise eligible to such classification. There are separate and individual classifications as between carmen and carman-helpers. As a consequence, other carman-helpers not in the military service acquired a classification under the rules as carmen through actual mechanical experience with a seniority superior to plaintiffs

and these are the ones whom the plaintiffs seek to supersede in their own favor.

The rights of the employees under contract between the railroad and the Federation are set forth and defined particularly in the Schedule of Rules introduced in evidence in rules 133 and 154, as follows:

"Rule 133. Qualifications. Any man who has served an apprenticeship or who has had four years' practical experience at carmen's work, and who with the aid of tools, with or without drawings, can lay out, build or perform the work of his craft or occupation in a mechanical manner, shall constitute a carman."

"Rule 154. In the event of not being able to employ carmen with four years experience, regular and helper apprentices will be advanced to carmen in accordance with their seniority. If more men are needed helpers will be promoted. If this does not provide sufficient men to do the work, men who have had experience in the use of tools may be employed. They will not be retained in service when four-year carmen become available.

"Note: Helpers advanced as above will retain their seniority as helpers."

The statute under which the suit is brought, hereinbefore referred to, purports to cover the situation of employment when an individual returns from his military service in that it is required that the employee shall be restored to such position or to a position of like seniority, status and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so and that such person so restored shall be considered as having been on furlough or leave of absence during the period of training and service in the land or naval forces without loss of seniority and shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces and shall not be discharged from such position without cause within one year after such restoration.

It is not in dispute that the plaintiffs here were classified as carman-helpers at the time they were inducted into the service and that upon their return they were restored to the same basis and classification, in compliance with the Federation rules hereinbefore quoted and there interpreted by the parties that in the case of a shortage of qualified carmen, helpers could be advanced temporarily as carmen with the same pay as qualified carmen while serving in such temporary capacity and that to become eligible as qualified carmen and to be classified as such they must have served in the capacity of temporary carmen for a period of four years, or as interpreted by the parties, for a period of 1160 days, based upon 290 days per year. Upon the conclusion of said term of 1160 days of actual work as a carman, the employee was entitled to make application for a position as a carman with an established seniority in that position from the date of such request, thereupon relinquishing his rights of seniority as a carman-helper. As will be seen by reference to the note interpreting the meaning of Rule 154, the helpers so advanced temporarily retain their seniority as carman-helpers.

It is the contention of the plaintiffs that under the Selective Training and Service Act pertaining to their seniority rights and under their interpretation of the above rules, they should have been restored to a seniority which would give them the same place on the rolls as though they had remained in the employ of the railroad and had not been drafted into service, thereby asserting that their 1160 days of required active service to qualify them for carmen went on the same as though they were actually completing their service under the rules and would be capable of applying for classification as carmen.

With this theory of the plaintiffs I cannot agree. Both parties rely to some extent upon the leading case of Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230. The plaintiffs find satisfaction in the generalities of this opinion which purport to support the theory that Congress, under the

Selective Training and Service Act sought to protect all the inductees into military service without any detriment to themselves and yet it is definitely stated that the Congress had no intention to set aside the seniority system in positions where such system prevailed, as in the case at bar. This is stated in the following language, 328 U.S. at page 288, 66 S.Ct. at page 1113: "Congress recognized in the Act the existence of seniority systems and seniority rights. It sought to preserve the veteran's rights under those systems and to protect him against loss under them by reason of his absence. There is indeed no suggestion that Congress sought to sweep aside the seniority system. What it undertook to do was to give the veteran protection within the framework of the seniority system plus a guarantee against demotion or termination of the employment relationship without cause for a year."

Therefore, the rules under the contract between the employer and the Federation must be applied in the interpretation of the Selective Training and Service Act. When so applied, I can reach no other conclusion than that the plaintiffs here were restored to the same position or to a position of like seniority, status and pay as when they were inducted into the service. It must be noted that in the restoration provided by the Act, the employee so inducted shall be considered as having been on furlough or leave of absence during his period of training and service. I do not see how it can be contended that where there is a certain requirement of actual work service in order to qualify an employee for an advanced position, to that of carman in this case, he can claim that the time spent in the military service would entitle him to advanced seniority when such seniority could not be acquired if he were on furlough or leave of absence. Under the latter situation, he would not be putting in any actual service which would entitle him to become a qualified carman as the required qualification is based on actual work performed as a temporary, acting carman. Thus it would seem to me that if an employee could not be entitled to an advanced classification while simply on fur-

lough or leave of absence, neither could he acquire the necessary qualification while in the service because the Act specifically provides that the inducted employee shall be considered as having been on furlough or leave of absence. There is no evidence before the Court that justifies the conclusion that under the contract embodying the rules in this case the employee gained any benefit to an advanced seniority if he were on furlough or leave of absence. It is not even contended in this case that the plaintiffs while in the military service performed any duties as mechanics which might be added to their previous experience as temporary carmen and which might justify the seniority sought. In Huffman v. Norfolk & Western Railway Co., D.C. W.D.Va., 71 F.Supp. 564, Judge Barksdale in a case where clerical duties were to be performed as a condition of advancement, held adversely to the contention of the plaintiff and touched the point which I believe is analogous to the conditions in the case at bar, where he says, 71 F.Supp. at page 568: "However, I find nothing in the Act to require, or even justify, the consideration of non-clerical military duty as clerical experience." This apt statement might be here paraphrased to say that nothing is found in the Act to require, or even justify, the consideration of non-mechanical military duty as mechanical experience. Other cases, although not identical on facts but analogous in principle are Trischler v. Universal Potteries, 6 Cir., 171 F.2d 707, and Seattle Star v. Randolph, 9 Cir., 168 F.2d 274. Additional cases have been cited and considered which have a bearing upon the questions here involved but this memorandum will not be extended by their citation.

The only case which seems to give support to plaintiffs' position is Spearmon v. Thompson, 8 Cir., 167 F.2d 626, which defense counsel has sought to distinguish and which I will not attempt here to follow but simply to say that if that Court attempts to decide that a classification under the rules which were in operation and which require a certain amount of actual work before an advanced classification may become available and that such classification can be secured without any actual work of the type which is made the qualifying factor by simply being in the military service, I am not in accord with the conclusion reached in that case.

In my view, the intent of Congress is not to be enlarged in favor of the inducted beyond the scope of its common and ordinary interpretation as expressed in the words of the Act. It may be admitted that the plaintiffs did suffer some disadvantage by reason of a possible deferment in seniority rating, yet but for the specific provisions of the Act they would be given no special consideration by reason of military service of any kind in connection with their employment. They would be simply subject to the ordinary hazards of war as for example, two men are inducted into the military service and one is killed while the other returns safe and sound; or, of two neighbors, equally eligible, one is drafted and the other is not. The hazards of war are such that there is no method which will relieve the automatic discriminations among individuals bound to exist in the process of protecting our national existence. This defense is therefore sustained.

The defendant and intervening defendants also earnestly contend that the rights of the plaintiffs under the Selective Training and Service Act for enforcement are limited to the one year mentioned in the Act as fixing the time within which they cannot be discharged without cause and that the year, in the case of each individual plaintiff had long since elapsed before seeking relief in this Court, for which reason they have no right which can be here enforced. Under the interpretation of the law by the Supreme Court in Trailmobile Company v. Whirls, 331 U.S. 40, 67 S.Ct. 982, 91 L.Ed. 1328, and later applied by the same Court which had been reversed, in Oakley v. Louisville & N. Railway Co., 6 Cir., 170 F.2d 1008, I am inclined to believe that this defense is equally good as the decision upon the merits as hereinbefore outlined and will also be sustained.

In this view I shall not consider nor discuss the State Statute of Limitations in connection with the case of plaintiff Zaversnik.

For the reasons herein stated, the defendant and intervening defendants must prevail and the action of the plaintiffs should be dismissed.

It will devolve upon counsel for the prevailing parties to prepare and submit appropriate findings of fact and conclusions of law in collaboration, however, with counsel for plaintiffs, but incorporating such basic and fundamental findings and conclusions as will support a judgment for defendants, reserving proper exceptions to plaintiffs, together with an appropriate judgment, on or before June 6, 1949.