Phillip W. SULARZ, Plaintiff,

v.

MINNEAPOLIS, ST. PAUL & SAULT
STE. MARIE RAILROAD CO., a cor-
poration, Defendant,

and

System Federation No. 66 of the Railway
Employes' Department of the Ameri-
can Federation of Labor, Intervener.

Civ. No. 4961.

United States District Court
D. Minnesota, Fourth Division.

Nov. 30, 1956.

George E. MacKinnon, U. S. Atty., and Keith D. Kennedy, Asst. U. S. Atty., St. Paul, Minn., for plaintiff.

Osborne Becklund, Minneapolis, Minn., for defendant.

Richard S. Felhaber, St. Paul, Minn. (Felhaber & Larson, St. Paul, Minn., of counsel), and Richard R. Lyman, Toledo, Ohio (Mulholland, Robie & Hickey, Toledo, Ohio, of counsel), for intervener.

NORDBYE, Chief Judge.

The above cause came before the Court for trial without a jury.

This action is brought under Section 8 of the Selective Training and Service Act of 1940, as amended.[1] Plaintiff seeks to require the defendant to place him on the carmen mechanics' seniority roster for its repair track as of the date on which he contends he would have been advanced or promoted from carman helper, the position he left to enter the military service, to a temporary carman mechanic if he had not been absent as a member of his country's armed forces.

Plaintiff originally commenced this action against the Railroad Company, but, on motion to the Court, the System Federation No. 66 of the Railway Employes' Department of the American Federation of Labor was permitted to intervene.

The facts material to this action are as follows. The System Federation has been the duly authorized collective bargaining representative under the Railway Labor Act, 45 U.S.C.A. § 151 et seq. of the class or craft of defendant's employees known as carmen at all times material to this action. This craft includes, among others, the categories known as carmen helpers and carmen mechanics. There is no dispute that, under the collective bargaining agreement in effect at all times material to this action, seniority in the category of carman helper is entirely separate and distinct from seniority in the category

1. See 54 Stat. 885, 890, 56 Stat. 724, 58 Stat. 798, 60 Stat. 341, 342. See 50 U.S.C.A.Appendix, § 308. The basic statute will be found at 54 Stat. 885. As amended the Selective Training and Service Act expired in its major part on March 31, 1947. Section 8, however, is saved indefinitely. See Act of June 29, 1946, 60 Stat. 341, 342, § 7. Section 8(c) provides: "Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) shall be considered as having been on furlough or leave of absence during his period of training and service in the land or naval forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration.".

The provisions of Section 9(c) (1) of the Selective Service Act of 1948, Act of June 24, 1948, 62 Stat. 615, amended and renamed the "Universal Military Training and Service Act" by the Act of June 19, 1951, 65 Stat. 75, 50 U.S.C.A. Appendix, § 459, are identical with those of Section 8(c) of the Selective Training and Service Act, but Section 9(c) (2) of the Selective Service Act of 1948 contained the following additional provision: "It is hereby declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment."

of carman mechanic. Helpers possess no seniority or bidding rights as mechanics and vice versa. Generally the duties of a carman helper consist of bringing to the carmen mechanics the supplies and other equipment necessary to their work and of oiling the cars. It is the carman mechanic's job to repair the cars "from the wheels right up to the roof." A helper is not permitted to do any of the carpentry work, sheet metal work, or other mechanical work which is a part of the carman mechanic's duties. To use the language of the railroad, the helper is not permitted to "put a wrench to a nut."

Defendant maintains a large area known as the Shoreham Yards for the repair and maintenance of railroad equipment. Within this area there are two separate points at which the craft known as carmen are employed at their tasks. These two points are within a quarter of a mile of each other and are known as the "coach shop", where coaches are repaired, and the "repair track", where freight cars are repaired. Under the prevailing seniority system, the seniority rosters for each of these points are entirely separate and distinct from those of the other. If a worker transfers from one point to the other, he cannot bring his seniority date over to the new location but must accept a new date there.

It is in the above context that the present seniority controversy arises. Plaintiff commenced working for defendant as a laborer at its Shoreham Yards on March 13, 1941, and was listed on the laborers' seniority roster at the repair tracks as of that date. On July 18, 1941, he was promoted to a carman helper at the repair track and was placed on the helpers' roster as of that date. He continued to work as such and to be on the seniority roster as of that date until November 24, 1942, when he entered the armed forces. There was a brief interval from July 19, 1942, to August 17, 1942, when plaintiff was assigned duties as a painter, a job usually performed by carmen mechanics, but it is undisputed that he was a carman helper at the time of his entry into the Service. On October 28, 1945, plaintiff was honorably discharged from the armed forces and on December 3, 1945, he made application to be, and was, re-employed by defendant. He was immediately assigned duties as a temporary carman mechanic, and was given his prior seniority date on the carmen helpers' roster. From December 3, 1945, until July 18, 1949, plaintiff worked as a temporary carman mechanic, and was carried on the carmen helpers' roster at the repair track at his prior seniority date of July 18, 1941. He was not carried on the carmen mechanics' seniority roster. On July 18, 1949, plaintiff was classified as a carman mechanic and given a mechanic's seniority date. He has worked continuously as such until the present time.

At first plaintiff was given a carman mechanic's seniority date of July 18, 1949. But on December 5, 1950, defendant and the System Federation entered into an agreement to accord to carmen helpers, who had been in the military service and had completed four years' experience as temporary carmen mechanics, a seniority date and rank as carmen mechanics ahead of those carmen helpers who had been junior to the veterans as carmen helpers, but who had been able to secure carmen mechanics' seniority ahead of them due to the veterans' absence in the Service. Pursuant to this agreement, plaintiff was assigned, and still holds, a carman mechanic's seniority date of July 3, 1948. This date was determined by taking the date at which the first carman helper below plaintiff on the seniority list at the repair shop in November of 1942 had completed his four years of service as a temporary carman mechanic and according this date to plaintiff with a position on the carmen mechanics' seniority roster just prior to that person's. Plaintiff now is contending that even this seniority date is not as early as he is required to be granted under the Selective Training and Service Act. He con-

tends he should have a seniority date of January 25, 1943, or at least prior to those of one Brown and one Brinda, whose dates now are January 25, 1947. It therefore becomes necessary to set forth in some detail the employment history of these two men with the defendant railroad.

During the war, and while plaintiff was absent in the armed forces, the railroad was faced with a shortage of qualified carmen mechanics due to the increased amount of work and the loss of men to the Services. To get the necessary men to perform the duties of carmen mechanics, defendant elevated many of its carmen helpers to temporary carmen mechanics. It also hired new men who were acquainted in the use of tools and gave them jobs as temporary carmen mechanics. And two men, Lawrence W. Brown and Joseph J. Brinda, carmen helpers at the coach shop, were induced to transfer from the coach shop to defendant's repair tracks. Brown and Brinda's seniority dates as carmen helpers at the coach shop were May 12, 1941, and July 9, 1941, respectively. Since under the seniority system in effect, men leaving the coach shop to work on the repair track could not retain their coach shop helper seniority, defendant, to induce these men to accept assignment as temporary carmen on the repair track, assured them that they would be given the same treatment as they would have had if their carmen helpers' seniority had accrued at the repair track. The System Federation concurred in this assurance. On January 25, 1943, Brown and Brinda accepted the assignment as temporary carmen mechanics on the repair tracks. Following their transfer, they were listed on the seniority roster at the repair tracks as carmen mechanics with seniority dates as of January 23, 1943. This listing was reflected in the carmen's seniority rosters published in 1943, 1944, 1947, 1948, 1949, and 1950, which were posted as required under the collective bargaining agreement. The collective bargaining agreement provided that all names and dates not protested after being posted for two consecutive years are to be considered as permanently established.[2] On October 6, 1944, Walter Feigel, General Chairman of the carmen and a representative of the System Federation, protested the seniority dates given Brown and Brinda on the carmen mechanics' roster at the repair tracks. As the result of this protest, they were removed from the carmen mechanics' roster and were only on the temporary carmen mechanics' roster for 1945. In 1946 they were placed on the mechanic helpers' roster at the repair tracks ahead of plaintiff. After they had served four years as temporary carmen mechanics, they were again placed on the carmen mechanics' roster in 1947 and assigned a seniority date of January 25, 1943. No protest of this seniority date was made until the error was brought up and discussed at a meeting on December 4 and 5, 1950, between the Union, defendant, and representatives of the veterans. It was agreed at this meeting that a mistake had occurred in assigning the above seniority date to Brown and Brinda. As the result of this meeting, Brown and Brinda consented to the correction of their seniority date to January 25, 1947, provided that any adjustment made as to the seniority date to be accorded to the returned veterans on the carmen mechanics' roster would not give the veterans a seniority date ahead of them.

The seniority date of Brown and Brinda was then changed to January 25,

2. "Rule 27, 3. In January of each year, seniority list will be issued showing the individual seniority standing of all those entitled to seniority in their respective crafts. Such seniority lists shall be posted and open for correction for a period of sixty (60) days from date of posting. All names and dates not protested for two consecutive postings shall be considered as permanently established, except that typographical errors may be corrected. The General Chairman shall be furnished copy of all seniority lists, and the Local Chairman shall be furnished copy of his local craft seniority list."

1947, and remains so at the present time.

Thus it is seen that a situation exists in which two men who were not on the carmen helpers' repair track roster at the time plaintiff entered the armed forces now have a seniority date ahead of plaintiff on the carmen mechanics' roster at the repair track.

Plaintiff contends that the Selective Training and Service Act of 1940, as amended, requires that his seniority as a carman mechanic be dated from the time at which he would have been advanced or promoted from a carman helper to a temporary carman mechanic if he had not entered the military service. He contends that this date would have been some time before January 25, 1947, the present seniority date of Brown and Brinda.

Plaintiff held a position with the railroad company as a carman helper prior to entering the Service. He contends that the practice and custom of defendant in increasing the force of temporary carmen mechanics was to go first to the ranks of carmen helpers at the seniority point involved. In upgrading carmen helpers to temporary carmen mechanics, their seniority standing was followed if they were otherwise qualified by reason of age, physical ability, and ability to speak the English language. The collective bargaining agreement required a carman helper to have four years' experience as such before he could be upgraded to the position of a temporary carman mechanic. But it is undisputed that this part of the collective bargaining agreement was not followed during the war. There is no doubt that if plaintiff had remained with defendant during the war he would have been upgraded to a temporary carman mechanic some time during that period. But

whether he would have been upgraded prior to the time Brown and Brinda were assigned duties as temporary carmen mechanics at the repair tracks is questionable. The evidence shows that seniority on the helpers' roster was only one of the factors in determining whether a man was to be upgraded to a temporary carman mechanic. Other factors such as age, physical condition, ability to speak and understand English, and general aptitude for the work were also considered. The man who was in general supervision over hiring and upgrading of carmen at the Shoreham Yards testified that, if plaintiff had been at work with the railroad during the war, he believed management would have upgraded Brown and Brinda before plaintiff because they had more experience,[3] had greater seniority, and were being asked to go from an inside job at the coach shop to an outside one at the repair tracks.

There is substance to plaintiff's position that it was the practice of defendant to upgrade the senior man on the repair track carmen helpers' roster to temporary carman mechanic when there was such a position to be filled, provided the senior man was physically fit, etc. Moreover, it would seem that plaintiff was qualified to meet all of the other factors taken into consideration besides seniority. And as a matter of course, he would have been upgraded to a temporary carman mechanic at some period after November 24, 1942 (the date he entered the Service) had he remained at work with the defendant company. However, it does not follow that he is entitled by the terms of the Selective Training and Service Act to a seniority date on the carmen mechanics' roster ahead of Brown and Brinda. The applicable collective bargaining agreement

3. Lawrence W. Brown commenced working for defendant as a laborer on the repair track in 1937. In 1938 he was set up as a carman helper. Then the forces were reduced and he was demoted to a laborer again in 1938. He was again set up as a carman helper on the repair track. On May 12, 1941, he transferred to the coach shop and was a carman helper there with seniority as of that date.

Joseph J. Brinda commenced working for defendant on March 10, 1941, as a laborer on the repair track. On July 9, 1941, he transferred to the coach shop where he held carman helper's seniority as of that date.

requires that a carman mechanic to qualify as such must either have served an apprenticeship or have had four years' practical experience at a mechanic's work.[4] It was the practice of defendant upon upgrading a carman helper to a temporary carman mechanic to retain him on the carmen helpers' roster until he had acquired four years' experience as a temporary carman mechanic and then to assign him to the carmen mechanics' roster with a seniority date as of the day following the completion of the four years' experience. If the man were forced by illness to lay off from his work for a specified period of time, he would have to make up that period of time beyond the four calendar years before he would receive his carman mechanic's date. There does not appear to be a single case in which a man was given a carman mechanic's seniority date antedating the date on which he had completed his four years. The error with respect to Brown and Brinda in that regard was rectified.

Plaintiff necessarily is required to take the position that the requirement of four years' service as a temporary carman mechanic may be satisfied by the mere lapse of four years and is not a period of training and experience to qualify for the position of a carman mechanic. The collective bargaining agreement sets forth the various types of work performed by a carman mechanic as his duties.[5] The tasks are numerous and some require special skills to perform. As has been previously noted, a carman helper is not permitted to perform any of the work assigned to carmen mechanics and so gains no actual on-the-job experience in the performance of this work. To suggest, therefore, that a totally inexperienced man, such as Sularz, even though he may have observed the performance of some of the work in the past, could step right in and immediately commence performing, with any degree of skill, the multitudinous number of tasks which are assigned to the carman mechanic is entirely without merit. The four years' practical experience required under the collective bargaining agreement is intended to be a period of on-the-job training and does actually fulfill this function. It is a necessary prerequisite to becoming a qualified carman mechanic under the collective bargaining agreement.

4. "Rule 93. Any man who has served an apprenticeship or who has had four (4) years practical experience at carmen's work, and who with the aid of tools, with or without drawings, can lay out, build or perform the work of his craft or occupation in a mechanical manner, shall constitute a carman.

"Note: This provision is applicable to the class which has been labeled carmen mechanics for the purpose of the present case."

5. "Rule 94. Carmen's work shall consist of building, maintaining, dismantling (except all wood freight-train cars), painting, upholstering and inspecting all passenger and freight cars, both wood and steel, planing mill, cabinet and bench carpenter work, pattern and flask making and all other carpenter work in shops and yards, except work generally recognized as bridge and building department work; carmen's work in building and repairing motor cars, lever cars, hand cars and station trucks; building, repairing, and removing and applying wooden locomotive cabs, pilots, pilot beams, running boards, foot and headlight boards; tender frames and trucks, pipe and inspection work in connection with air brake equipment on freight cars; applying patented metal roofing; operating punches and shears doing shaping and forming; work done with hand forges and heating torches in connection with carmen's work; painting, varnishing, surfacing, decorating, lettering, cutting of stencils and removing paint (not including use of sand blast machine or removing in vats), paint sprayers; all other work generally recognized as painters' work under the supervision of the locomotive and car departments, except the application of blacking to fire and smoke boxes of locomotives in engine houses; joint car inspectors, car inspectors, safety appliance and train car repairs; oxyacetylene, thermit and electric welding on work generally recognized as carmen's work; and all other work generally recognized as carmen's work."

Many courts have held that where promotions or pay increases are dependent upon qualifications other than mere length of service, the time spent as a member of the armed forces cannot be treated as the equivalent of such qualifications. Addison v. Tennessee Coal, Iron & Railroad Co., 5 Cir., 204 F.2d 340; Lipscomb v. Tennessee Coal, Iron & R. Co., 5 cir., 189 F.2d 708; Nevins v. Curtiss-Wright Corp., 6 Cir., 172 F.2d 535; Raulins v. Memphis Union Station Co., 6 Cir., 168 F.2d 466; Gregory v. Louisville & N. R. R., D.C., W.D.Ky., 92 F.Supp. 770, affirmed, 6 Cir., 191 F.2d 856, certiorari denied 343 U.S. 903, 72 S.Ct. 634, 96 L.Ed. 1323. This Court is persuaded that where there is a requirement that a man must work a specified period of time on the job, and it is evident that this requirement is not satisfied by the mere lapse of the designated period of time, but that its purpose is to increase the worker's skill and proficiency at the job through experience, then time spent in the armed forces is not to be credited as time worked on the job in determining when the veteran has qualified for promotion entitling him to seniority rights in that job classification. The courts which have passed upon the question in relation to either promotion or an increase in pay under the prevailing collective bargaining agreements have uniformly so held. Zaversnik v. Union Pac. R. Co., D.C.Wyo., 95 F.Supp. 209; Altgens v. The Associated Press, 5 Cir., 188 F.2d 727; Huffman v. Norfolk & Western Ry. Co., D.C.W.D.Va., 71 F.Supp. 564; Addison v. Tennessee Coal, Iron & Railroad Co., supra.

The case of Spearmon v. Thompson, 8 Cir., 167 F.2d 626, certiorari denied 335 U.S. 822, 69 S.Ct. 44, 93 L. Ed. 376, is not contrary to the holding of the above cases. There, Spearmon had been advanced from the position of carman helper to that of carman mechanic prior to his entry into the armed forces. He was so advanced pursuant to a collective bargaining agreement of July 1, 1942, which to meet the shortage of carmen mechanics caused by the war emergency, permitted the advancement of carmen helpers to mechanics. By the terms of this agreement, a helper advanced to temporary carman mechanic was eligible for permanent assignment as a mechanic if he should "accumulate three years or more service as a mechanic." His carman mechanic's seniority was to date from the time he completed his three years as a temporary carman mechanic. After Spearmon's induction into the Service, a number of carmen helpers who did not enter the armed forces were advanced to the position of temporary carman mechanic, accumulated three years' service as such, and after exactly three years in each case, were permanently classified as mechanic. They held carmen mechanics' seniority dates prior to Spearmon. The court held that Spearmon was entitled to have the time he spent with the armed forces applied toward seniority as a carman mechanic. But it found that the agreement then in effect only required three years' time to elapse while a worker served as a temporary carman mechanic, and that the reason for this three-year requirement was *not* to increase the worker's proficiency at his job, but was for the sole purpose of protecting the seniority of those already classified as carmen mechanics prior to the emergency agreement. Moreover, it was stipulated that at the time Spearmon returned to his job from military service, he was as well qualified to perform the duties of a carman mechanic as he was at the time he left that job to enter military service. The court recognized in the Spearmon case that if the contract required three years' service on the job "as a prerequisite to the attainment of the degree of proficiency which would entitle them to classification as mechanics", the appellants were entitled to no relief. 167 F.2d at page 630. And as to one Delozier, one of the appellants, who was a helper at the time of his induction and as to whom it was stipulated that had he remained in that position of helper instead of entering the Service, he would have been advanced to me-

chanic, the fact that he was a helper when inducted, in the opinion of the court entitled him only to seniority in the position of a helper when he returned from the Service. So here, when Sularz returned to the railroad after his military service, all he was entitled under the Act as a matter of right was to be restored to the position of carman helper on the repair track with the accrued seniority for the time he had spent in the Service. Certiorari was denied in the Delozier claim. See Delozier v. Thompson, 335 U.S. 866, 69 S.Ct. 238, 93 L.Ed. 424.

■ At the trial herein, there was some controversy between the parties as to the applicability of a memorandum agreement of October 16, 1941 (Plaintiff's Exhibit 3) between the System Federation and defendant, to the advancement of carmen helpers to carmen mechanics at defendant's repair tracks. The Court does not believe that its conclusions herein would differ if that agreement were applicable. But, to keep the record clear, the Court believes that this agreement was not applicable to the advancement of helpers to mechanics at defendant's repair track. These advancements were made pursuant to Rule 112 of the collective bargaining agreement in effect between the parties.[6] The language of this rule indicates that it is intended that helpers advanced to temporary carmen mechanics are to have a period of on-the-job training to learn the trade. The Court has no doubt that it is intended to be applied in connection with Rule 93 in determining when an advanced helper becomes a full-fledged carman mechan-

ic. It is clear from the collective bargaining agreement and from defendant's practice of requiring four years' actual experience as a temporary carman mechanic that it was not intended that this requirement be satisfied by the mere lapse of four years, but that it is intended to be a period of on-the-job training to increase the proficiency and skills of the worker through actual experience.

■■ Of course the Selective Training and Service Act recognizes the existence of seniority systems and seniority rights, unless they are discriminatory towards veterans, and the Act is intended to protect the veterans' rights within the prevailing seniority system. Aeronautical Indus. Dist. Lodge v. Campbell, 337 U.S. 521, 69 S.Ct. 1287, 93 L.Ed. 1513; Fishgold v. Sullivan Drydock & Repair Corp., 1946, 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230; Zaversnik v. Union Pac. R. Co., supra. Here, under the prevailing seniority system we have two separate and distinct seniority rosters,[7] the carmen helpers and the carmen mechanics. As has been shown previously, even if plaintiff is entitled as a matter of right to be advanced from carman helper to temporary carman mechanic he is not entitled to have his time in the Service credited as time worked as a temporary carman mechanic in determining when he is eligible for promotion to carman mechanic. Under the applicable agreement, plaintiff is not entitled to promotion to the position of carman mechanic until he has completed four years' practical experience at a mechanic's work. He completed the actual performance of the

6. Rule 112. 1. In the event of not being able to employ carmen with four years experience and the regular and helper apprentice schedule not providing men enough to do the work, the forces may be increased in the following manner:

  *  *  *  *  *

 3. Helpers who have had four or more years experience at point employed may be promoted to mechanics, they to receive the minimum rate for carmen and to be given an opportunity to learn the trade, seniority to govern.

7. There was a third roster for temporary carmen mechanics but it was only applicable to men who were not previously carmen helpers at the repair track and were hired as temporary carmen mechanics. It gave them seniority only as among themselves. Carmen helpers on the repair track who were set up to temporary carmen mechanics were retained on the carmen helpers' roster and not placed on the temporary carmen mechanics' roster.

required period of time on the job on July 19, 1949, and this is the seniority date he is entitled to as a carman mechanic under the prevailing seniority system. He was, however, assigned a seniority date of July 3, 1948. It is clear that the Selective Training and Service Act does not require that seniority in one classification be made to constitute seniority in a second and distinct classification; or, as applied to the instant case, that seniority acquired by plaintiff as a carman helper or as a temporary carman mechanic be credited as seniority as a carman mechanic prior to plaintiff's actual promotion to the latter position. Gregory v. Louisville & N. R. R., supra.

Plaintiff contends that Diehl v. Lehigh Valley R. Co., 1955, 348 U.S. 960, 75 S.Ct. 521, 99 L.Ed. 749, a per curiam decision, requires that plaintiff be promoted to carman mechanic with a seniority date antedating that of Brown and Brinda. But the facts in that case (found at 3 Cir., 211 F.2d 95, 97) are substantially different from those present here. There, Diehl was advanced to a position equivalent to temporary carman mechanic prior to entering the armed forces. After his discharge, he returned to work as a temporary carman mechanic. On March 1, 1949, a supplemental agreement was entered into between the Union and the railroad (pursuant to a prior agreement of August 29, 1944, which provided that the seniority status of carmen helpers promoted to temporary carmen mechanics would be determined by the Union and the railroad at the expiration of the war emergency) whereby:

" 'A carman helper, who has qualified as a carman mechanic * * * and is presently working on position of a temporary carman mechanic on the effective date of this agreement [March 1, 1949], shall be given the opportunity to make an election within 15 days after the date of his being notified of having worked 1160 days as a temporary carman mechanic to be placed on the permanent carman mechanics' roster with seniority date as of the effective date of this agreement in the order with other men in which he completed 1160 days' experience * * and if so electing shall forfeit his seniority as a carman helper.' "

Diehl actually had completed 1,160 days' experience on January 10, 1949, prior to the time the agreement was entered into. Had he not entered the military service, he would have completed 1,160 days on June 1, 1946. Four non-veterans completed their experience between these dates and by the terms of the agreement would be ahead of plaintiff on the seniority roster for carmen mechanics. The Supreme Court reversed the decision of the Court of Appeals which had held that the agreement was not discriminatory as to veterans and should be followed. There is no indication from the facts set forth in the Diehl case that it was necessary to have had any practical experience or on-the-job training as a temporary carman mechanic to qualify as a carman mechanic under the applicable collective bargaining agreement prior to March 1, 1949. Diehl was in a certain position on the temporary carmen mechanics' seniority roster at that time. Then the company and the Union chose a method of determining the seniority status of men on the temporary carmen mechanics' roster which was not based upon the order of their promotion to temporary carmen, but was based upon the order of their completion of 1,160 days of work as a temporary carman mechanic. Such a retroactive requirement of on-the-job experience as a temporary carman mechanic which resulted in the placing of non-veterans who were lower on the temporary carmen mechanics' list above the veteran Diehl on that roster because he was absent for a time in the military service, was held by the Supreme Court to be discriminatory and contrary to the Selective Training and Service Act's requirements. The reasoning behind the Diehl case is not applicable to the facts of the instant case where the collective

bargaining agreement applicable at all times required a four-year period of on-the-job training and experience before a worker could become a carman mechanic.

Finally, plaintiff contends that Section 9(c) (2) of the Selective Service Act of 1948, set forth in full in footnote 1, supra, requires that plaintiff be promoted to carman mechanic with a seniority date antedating that of Brown and Brinda. The Court believes that this congressional construction of the Act is a restatement of the familiar escalator provision set forth in Fishgold v. Sullivan Corp., supra, and reiterated in other decisions. Senate Report No. 1268, U.S.Code Congressional Service, 80th Congress, 2nd Session, 1948, p. 1989, 2004. In the Fishgold case, the court stated, 328 U.S. at pages 284–285, 66 S.Ct. at page 1111,

"* * * Thus he does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war."

It may be noted that the court was construing the meaning of Section 8(c) of the Selective Training and Service Act of 1940 when it used the above language. Obviously, it was not considered as contradictory or inconsistent with the "furlough" and "leave of absence" criterion set forth in that section. There is no indication that this provision was intended to require a veteran to be granted a promotion where the promotion is dependent upon factors in addition to mere lapse of time. Many of the cases cited heretofore were decided after the enactment of this provision. The Court is of the opinion that even if it were to be recognized as a statement of the meaning to be attributed to Section 8 of the Selective Training and Service Act of 1940, there is nothing inconsistent between it and the holding herein.

The above findings of the Court are dispositive of plaintiff's claim. Defendant makes the further contention that

plaintiff has been guilty of such inexcusable delay in the commencement of this action as to constitute laches and that bars him from maintaining this action. However, in view of the foregoing, the Court does not deem it necessary to discuss that question.

The Court adopts the above as its findings of fact, and as conclusions of law finds that plaintiff is not entitled to a seniority date prior to that of Brown and Brinda on the carmen mechanics' roster. His claim should be, and it hereby is, dismissed. It is so ordered. An exception is reserved.