**CUSHNIER et al. v. FORD MOTOR CO.**

**DES JARDINS et al. v. FORD MOTOR CO.**

**SALCICCIOLI v. FORD MOTOR CO.**

Nos. 7647–7649.

United States District Court,
E. D. Michigan, S. D.

Jan. 25, 1950.

492

Edward T. Kane, United States District Attorney, Detroit, Mich., for plaintiffs.

Morris Zwerdling, Detroit, Mich., for interveners.

William T. Gossett, Joseph A. O'Reilly, Dearborn, Mich., Fred Nash, Detroit, Mich., for defendant.

PICARD, District Judge.

These cases, brought under Section 8 of the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix, § 308(b) (B) and (c) by five World War II veterans employed by defendant, being concerned with the same question, were consolidated by consent. Action on behalf of plaintiffs Joseph Cushnier, Marcel Des Jardins and John Salciccioli was brought by the United States attorney. Abraham J. Dunn and Richard McPhee, interveners, are represented by counsel of their choosing. The cases were submitted on stipulation and a brief hearing.

Cushnier was employed by defendant in an hourly-rated position from March 8, 1940, to February 24, 1941, when he left to enter service. Honorably discharged February 16, 1946, he was reinstated by defendant March 12, 1946. Cushnier had five years seniority as of December 1, 1945.

Dunn was employed by defendant in an hourly-rated position from September 25, 1940 to January 30, 1942, when he left to enter service. Honorably discharged November 22, 1945, he was reinstated by Ford December 10, 1945. As of December 1, 1945, Dunn had five years seniority.

Des Jardins was employed by defendant in an hourly-rated position from February 20, 1941, to March 11, 1943, when he left to enter service. Honorably discharged February 13, 1946, he was reinstated by defendant March 14, 1946. As of December 1, 1946, Des Jardins had five years seniority.

McPhee was employed by defendant in an hourly-rated position from May 19, 1941, to September 29, 1942, when he left to enter service. Honorably discharged November 3, 1945, he was reinstated by defendant December 10, 1945. As of December 1, 1946, McPhee had five years seniority.

Salciccioli was employed by defendant in an hourly-rated position from April 16, 1940, to June 25, 1941, when he left to enter service. Honorably discharged October 13, 1945, he was reinstated by defendant November 2, 1945. As of December 1, 1945, Salciccioli had five years seniority.

All five plaintiffs received one week's vacation pay during certain given years and all of them contend that because each had seniority of at least five years, they were entitled to one week more of vacation, or one week's pay in lieu thereof, for each of those given years. Cushnier claims one week's additional pay ($53.20) for the vacation period ending in 1946, and one week's additional pay ($57.80) for 1947. Dunn claims one week's additional pay each for 1946 and 1947 ($55.20 and $59.80). Des Jardins claims one week's additional pay for 1947 ($54.40). McPhee claims one week's additional pay ($55.20) 1947. Salciccioli claims one week's additional pay each for 1946 and 1947 ($55.20 and $61.80.)

Once all five plaintiffs were reinstated, none of them was absent for a period in excess of the maximum number of absences allowed by the vacation provisions of the contracts entered into at various times by the company and the union representing the workers (UAW–CIO). And it is admitted that in all respects other than vacation pay defendant's treatment of plaintiffs gives rise to no other cause of action for abrogation of veterans' rights under the Selective Training and Service Act. All five plaintiffs are Michigan residents. Defendant is a Delaware corporation.

There are two questions before us:

(a) Can plaintiffs recover a second week's vacation pay under the contracts between defendant and the union; and

(b) If not, may they recover under the Act, on the theory that such interpretation of the contracts renders them void as discriminating against plaintiffs?

We first quote the pertinent parts of the statute:

"(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position, other than a temporary position, in the employ of an employer and who (1) receives such certificate, (2) is still qualified to perform the duties of such position, and (3) makes application for reemployment within forty days after he is relieved from such training and service—

\*     \*     \*     \*     \*     \*

"(B) if such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so;

\*     \*     \*     \*     \*     \*

"(c) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) shall be considered as having been on furlough or leave of absence during his period of training and service in the land or naval forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration." Sept. 16, 1940, c. 720, Sec. 8, 54 Stat. 890. Subsection (a), not quoted, was amended in 1942.

Before proceeding we pause to note that the purpose of the Act was expressed in Fishgold v. Sullivan Drydock & Repair Corp., 1945, 328 U.S. 275, at page 284, 66 S.Ct. 1105, at page 1111, 90 L.Ed. 1230, 167 A.L.R. 110: "He who was called to the colors was not to be penalized on his return by reason of his absence from his civilian job. He was, moreover, to gain by his service for his country an advantage which the law withheld from those who stayed behind." See Meehan v. National Supply Co., 10 Cir., 1947, 160 F.2d 346, 347.

Furthermore, the Act is to be construed liberally in favor of the veteran, Meehan v. National Supply Co., supra, and is paramount to any contract or practice of employers and unions to cut down the vet-

eran's benefits. Fishgold v. Sullivan Drydock & Repair Corp., supra, and Spearmon v. Thompson, 8 Cir., 167 F.2d 626, 630, certiorari denied, Thompson v. Spearmon, 335 U.S. 822, 69 S.Ct. 44.

With these basic considerations serving as a pattern, we proceed to the first question:

(a) Can Plaintiffs Recover a Second Week's Vacation Pay Under the Contracts Between Defendant and the Union?

The first vacation provisions were drafted by the National War Labor Board and established November 20, 1942, when the union and defendant failed to reach agreement as to terms. Cushnier, Dunn, McPhee and Salciccioli had already entered service. The provisions of the November 20, 1942, contract were substantially copied, but with the addition of explanatory paragraphs, in an agreement between the union and Ford October 1, 1943. By this date Des Jardins too had left for active service. Supplemental or new agreements were entered into October 1944, May 27, 1946, August 21, 1947, and July 29, 1948. All five plaintiffs had returned to their jobs before May 27, 1946.

Under all the agreements the full vacation year ran from December 1 to November 30 of the following year. This was known as the "vacation period" and December 1 was known as the "eligibility date."

The October 1, 1943, agreement with an amendment October, 1944, relaxing the requirement of employment on the eligibility date as it affected veterans, governed the vacation period ending November 30, 1946.

The vacation period ending November 30, 1947, was governed by an agreement ratified May 27, 1946, which liberalized for veterans and a few others, the requirements for time worked in the year immediately preceding the period but otherwise retained the critical requirement which kept plaintiffs from obtaining two weeks' vacation, to-wit that he must "at some time" during the preceding five years of vacation periods have been enrolled as "a full time employee." It is to be noted, however, that the vacation periods which the veteran

might have accrued at the time he was called to the colors were added to those he worked following his reinstatement just as though there had been no hiatus in his employment.

Under our analysis of the contract provisions we find that the basic contract test for two weeks' vacation was two-fold: (1) at least five years' seniority, and (2) enrollment on the active rolls "at some time" in each of the preceding five years. Defendant claims that none of the plaintiffs meet the second test.

The evidence shows that enrollment on the active rolls was interpreted to mean actual employment on the current working force of the company although some employees might be absent without leave, absent due to layoffs or absent with leave. Absent employees remain on the active rolls only a specified limited time after which their names would be removed to the inactive list. Absences with leave applied to union officers, men in service and sick absences. Short term leaves could be obtained for other reasons and the employee remain on the active rolls. Names would be shifted from the inactive to the active rolls when the employee went back to work. In addition, the employee must have been on the active rolls at the beginning of the eligibility period, could not have been absent, with certain exceptions, more than a specified number of days, and had to be actively enrolled at least a specified number of weeks. But all these latter qualifications were amended in some degree in favor of veterans except the two-fold test mentioned above which remained in force during the years in question.

▮ Of course the provisions of the Act protect the absent serviceman's seniority and he progressed as though on an "escalator", Fishgold v. Sullivan Drydock & Repair Corp., supra, so that seniority continued to accrue to him while away. In the cases at bar the veterans, by adding the time spent in service, admittedly had at least five years' seniority during the years in question. However, the terms of the contract are clear and unambiguous, and we find that since none of said plaintiffs was on the active rolls in each of the five pre-

ceding years even by adding all time worked before entry into service, the veterans received what they were entitled to under the contract.

It is enlightening to note that a National War Labor Board member who was later selected as impartial referee by defendant and the union held to the same effect, to-wit that employees were not entitled to two weeks' vacation where they did not have five years' actual enrollment even by tacking pre-service to post-service time. Furthermore, Dunn and Salciccioli instituted separate grievance proceedings to obtain the two weeks' vacation which were denied and from which denials no appeal was taken. Correspondence between the referee and the company and union also corroborates our construction of the contracts.

■ We hold further that these contracts are binding on the veterans despite the fact that all were in service when at least some of the agreements were entered into and Gauweiler v. Elastic Stop Nut Corporation, 3 Cir., 1947, 162 F.2d 448; Aeronautical Industrial Dist. Lodge 727 v. Campbell, 1948, 337 U.S. 521, 69 S.Ct. 1287 are authorities for the proposition that an employee absent in war service is bound by collective bargaining agreements made between employer and union, providing the agreement does not discriminate against veterans, which brings us to the second question.

(b) If Not Under the Contracts May Plaintiffs Recover Under the Act on the Theory That the Contracts are Void as Discriminating Against Plaintiffs?

Must these agreements fall because they violate the purpose and spirit of the Selective Service and Training Act? Do these agreements discriminate against veterans? Gauweiler v. Elastic Stop Nut Corporation, supra. Admittedly the veterans were deprived of benefits which they might otherwise have obtained had they not been away in service. But is this a detriment aimed solely at the veterans with intent to injure them as a class?

At the outset we desire to state that nothing in the pleadings, elaborate stipulation or hearing before us indicates that these contracts were entered into in anything but good faith or that the bargaining was not in earnest. As Justice Frankfurter said, concluding his opinion in Aeronautical Industrial Dist. Lodge 727 v. Campbell, supra, an action under the Selective Training and Service Act, 337 U.S. at page 529, 69 S. Ct. at page 1291: "All this presupposes, obviously, that an agreement containing the 1945 provisions expresses honest desires for the protection of the interests of all members of the union and is not a skillful device of hostility to veterans. There is not the remotest suggestion that the 1945 agreement was other than what it purported to be—the means for securing both to veterans and to nonveterans better working conditions * * *."

■ But plaintiffs contend that the provision requiring work "at some time" in each of the preceding five years in order to qualify for a two weeks' vacation is an attempt to circumvent the Act's protection of the veterans' seniority. They characterize this clause as a "gun" aimed directly at the veteran. Taking an extreme situation, they point out that an employee on leave not absent in service—could work only one day in each of five preceding years and full time for the next vacation period thus entitling him to a two weeks' vacation, while a veteran away on duty could not get back to pick up those single days. The company counters, however, by saying that this presupposes collusion between the company and the favored employee to enable him to slip back onto the active rolls for any minimal time in each of five years. The company argues that fraud such as this is unthinkable, and with this we agree. There is no evidence of collusion here. It is our holding that the proviso of work "at some time" was not an "added fillip," as plaintiffs urge, but a bona fide attempt on the part of the company to enlarge requirements for vacation beyond mere seniority, to make these vacations compensation for actual work performed, and that this desire was fulfilled by the phrase "at some time." Nor is there a scintilla of evidence that the extreme case suggested by plaintiffs ever actually occurred. In the light of authorities discussed below the case for

the defendant would have been strongest if a specific amount of working days were set forth. In these cases the plaintiffs would prevail if seniority alone were the test. But we cannot disregard the fact that the contracts set forth a test of seniority plus actual time worked. Evidently, this was the best bargain the company could get in their negotiations.

Plaintiffs also advert to the fact that employees were sometimes off the rolls for long periods of time while working for members of the Ford family or interests and yet were specifically permitted to count time while engaged in such work. This, plaintiffs term, is discrimination. But defendant answers that there was an implicit understanding that these employees were still Ford workers, and it is important to note that these employees actually performed work. We do not consider an arguable exception for this limited class of employee discriminatory. But the fact remains that by these contracts the treatment of veterans was better in many respects than that afforded others not in the service and, as to the provision of work "at some time" was similar to that accorded other employees on leave of absence, especially union officers, thus complying with the test of Dougherty v. General Motors Corporation, 3 Cir., 1949, 176 F.2d 561 hereinlater cited.

And let us further examine how the Act has been interpreted in reference to vacations for delimitation of the scope of the Act's coverage.

In the case of Mentzel v. Diamond, 1948, 167 F.2d 299, 300, the Circuit Court of Appeals for the Third Circuit construed the following contract provision: "* * * vacations of two weeks with pay after five years of service". The court held that the veteran is to be treated "as though he had worked every day at the plant." and awarded him two weeks' vacation.

In MacLaughlin v. Union Switch & Signal Co., 3 Cir., 1948, 166 F.2d 46 the court construed a clause requiring "service" as entitling the absent veteran to vacation benefits. We do not deem this case controlling because there the veteran had been deprived of one vacation by induction during

the period and another vacation because of the date on which he returned. We believe these forceful equities, not present in the case at bar, controlled the court's opinion. See Dougherty v. General Motors Corporation, supra.

But in the Dougherty decision, by the same third circuit, the court held adversely to the veteran seeking vacation pay where the test was one year's seniority and work "during the pay period" [176 F.2d 562] of *only six days*. The amount of benefits were determined by multiplying the applicable number of hours times the pay per hour. The court said that it could not alter the vacation provisions so long as the veteran was treated no differently than an employee on leave of absence. The court held it could not impose a new contract on the parties. (Compare the "six day" test to the "at some time" test before us.)

Judge Learned Hand, in Dwyer v. Crosby Co., 2 Cir., 1948, 167 F.2d 567, 570, found a distinction in a similar case under the Act not recognized in the Mentzel case. He ruled that: "* * * the considerations which might make it proper that service in the Army should not affect a man's seniority are utterly different from those which should count in computing vacations." The court held that if employees on leave of absence were not entitled to count that period toward vacations, veterans could not count time in service. The critical language of the contract in question was "in the employ of the company for" at least 26 weeks to entitle the employee to the one week's vacation sought.

In Siaskiewicz v. General Electric Co., 1948, 166 F.2d 463 the second circuit again passed on vacation benefits in interpreting a contract calling for one year of "continuous service" and if absent on leave at least six months' employment to entitle an employee to one week's vacation. In denying recovery the court held that vacations came under the heading of "other benefits" clause of the Act, 50 U.S.C.A.Appendix, § 308(c), and veterans were not discriminated against so long as they were treated just as nonveterans on leave of absence. The court concluded that discrimination in favor of

the veterans was as foreign to the Act as permitting discrimination against them.

When the test for a two weeks' vacation was that the employee be "continuously in its (company's) employ for a period of five years or more," the court held that they could not count time in service as contributing to the qualification of five years or more. The court observed that there was no showing that employees on leave were treated differently and ruled against the veteran. Brown v. Watt Car & Wheel Co., 17 CCH Labor Cases Pgh. 65,293 (1949), S.D.Ohio, E.D.

An apparent rationale of all these cases is that where the test of vacation is mere seniority, the veteran is entitled to such benefits by virtue of the Act but where the test is either what we choose to call seniority "plus," that is, seniority and the added factor of work at some time or other during the significant period, or solely actual time worked, then time in service does not count in determining the right to vacation benefits.

We admit that the Mentzel case, supra, is contra to our reasoning but there the court apparently did not choose to give weight to the distinction we draw, and there was no showing of treatment accorded employees on leave, whether superior or equal to that accorded to veterans.

We note that in all cases there is implicit an interpretation of the Act prohibiting discrimination. Since all but the Mentzel and MacLaughlin citations of the above cases held against the veteran, we construe them to establish a line of authority holding that contracts which in effect bar veterans from counting service time to qualify for vacations are not discriminatory per se so long as the veteran is treated no differently than employees on leave or furlough.

Nor does the "escalator" interpretation of seniority compel us to a different conclusion. As Judge Hand pointed out in Dwyer v. Crosby Co., supra, the fruits of seniority are not necessarily vacation benefits. The contracting parties can assign to seniority whatever benefits they will. See Aeronautical Industrial Dist. Lodge 727 **v.** Campbell, supra, where the court held:

"In providing that a veteran shall be restored to the position he had before he entered the military service 'without loss of seniority,' § 8 of the Act uses the term 'seniority' without definition. It is thus apparent that Congress was not creating a system of seniority but recognizing its operation as part of the process of collective bargaining. We must therefore look to the conventional uses of the seniority system in the process of collective bargaining in order to determine the rights of seniority which the Selective Service Act guaranteed the veteran.

\*    \*    \*    \*    \*    \*

"There are great variations in the use of the seniority principle through collective bargaining bearing on \* \* \* the consequences which flow from seniority." 337 U.S. at page 526, 69 S.Ct. at page 1290.

We deem especially significant the last line of the quoted portion whereby the Court accords great latitude to the parties in determining the fruits of seniority.

It is our holding, therefore, that the contracts in the case at bar, under our interpretation, require seniority "plus," that is, time worked "at some time" in each of five preceding years to entitle an employee to two weeks' vacation in addition to five years' seniority. In the absence of a showing to the contrary, we find no malice in the insertion of this provision which we have heretofore construed as requiring actual work performed and we hold the parties were free to contract in such a manner. Further, the treatment accorded the veteran was identical with or better than that given the employee on leave of absence (we reject plaintiffs' contention that the "at some time" clause was an "added fillip" which militated solely against the veteran) and thus find no discrimination. Under the Aeronautical Industrial Dist. Lodge 727 case, supra, the parties had a right to assign whatever benefits to seniority they chose.

## Other Contentions

Plaintiffs also contend a 1948 amendment of the Act was beneficial to them. But in Nevins v. Curtiss-Wright Corporation, 1949, 172 F.2d 535 the court

of appeals for the sixth circuit held the amendment was not retroactive. The amendment in question, 50 U.S.C.A.Appendix, § 459(c) (2), construed subsection (b) (B) of this section as giving the veteran "such status in his employment as he would have enjoyed if he had continued in such employment continuously" while in the service. Subsection (b) (B) is for the purposes of the case at bar substantially the same as that found in 50 U.S.C.A.Appendix, § 308(b) (B) of the 1940 Act which we have quoted in the fore part of this opinion. Suffice it to say we follow the ruling of the Nevins case without discussing the accuracy of plaintiffs' contention.

Defendant argues that language in section 308(c) to the effect that the veteran "shall not be discharged from such position without cause within one year after such restoration" constitutes a one-year statute of limitations in the sense that it is a limitation on the life of the benefits under the Act. In the light of our holding, this contention is not of great moment but considering the recent opinion of the Supreme Court in Oakley v. Louisville & Nashville Railroad Co., 338 U.S. 278, 70 S.Ct. 119, we seriously question the validity of defendant's argument. Defendant's reasoning was based on the Fishgold case, supra, which, however, was qualified by Trailmobile Co. v. Whirls, 331 U.S. 40, 60, 67 S.Ct. 982, 91 L.Ed. 1328, and the Oakley case, supra.

Before concluding, we consider a contention raised by plaintiffs that vacation benefits were part of the overall "status" *not contingent on ability or performance of work* (our emphasis) of the returning veteran and this "status" was protected by the Act. This argument contains seeds for its own defeat in the broad exception plaintiffs state. Assuming that "status" did include vacations, such "status" was contingent under the contracts at bar on actual work performed. So the contention is of no avail in the case at bar for want of such performance, and thus the asserted "status" was lacking. This argument was discussed briefly by the court in the Siaskiewicz case, supra, and rejected by it, stating that "status" was "payroll status" which veterans lacked under the circumstances of that case.

The holding reaffirms our disposition of plaintiffs' contention.

We therefore hold that a judgment of no cause for action be entered, and rule for defendant.

### Appendix

The pertinent paragraphs of the October 1, 1943, agreement are in the appendix—

"80(a) (4) An employee who is enrolled on the employment records of the Company as a full time employee on the eligibility date and who has been so enrolled for five years or more, and (except for the first and second vacation periods) whose absences from his regularly scheduled work, except for lay-offs, in the year immediately prior to the first day of the vacation period have not aggregated more than forty-five (45) days, shall be entitled to a vacation of two weeks during the vacation period with pay for eighty hours at his basic hourly rate, exclusive of any premiums, on the date his vacation begins.

"(5) An employee who is enrolled on the employment records of the Company as a full time employee on the eligibility date and who has been so enrolled for five years or more, and (except for the first and second vacation periods) whose absences from his regularly scheduled work, except for lay-offs, in the year immediately prior to the first day of the vacation period have exceeded forty-five (45) days, shall be entitled to vacation of one week with pay for forty hours at his basic hourly rate, exclusive of any premiums, on the date his vacation begins."

\*   \*   \*   \*   \*   \*

"(b) In applying the foregoing rules, it is agreed that

\*   \*   \*   \*   \*   \*

"(2) The corresponding provisions in paragraphs 80(a) (4) and 80(a) (5) require that an employee be enrolled on the employment records of the Company as a full time employee on the eligibility date and that he shall have been so enrolled at some time in each of the five one-year periods immediately preceding the eligibility date.

\*   \*   \*   \*   \*   \*

"(3) Paragraphs/80(a) (4) and (5) require, however, that an employee shall have

had at least * * * five years' seniority, * * *, as of the eligibility date, in order to be eligible.

* * * * * *

"(5) An employee who was eligible for two weeks' vacation as of the first day of the first vacation period, under paragraph 80(a) (4), shall be eligible for two weeks' vacation as of the eligibility date for the second and succeeding vacation periods during the life of this contract, if such employee has retained his seniority, is enrolled on the employment records of the Company as a full time employee on such eligibility date and has been so enrolled at some time during each of the periods between eligibility dates succeeding the first eligibility date, and (except for the second vacation period) his absences from his regularly scheduled work, except for layoffs, since the last preceding eligibility date have not aggregated more than forty-five days.

"(6) Where an employee is not enrolled on the employment records of the Company as a full time employee for the entire length of one or more of the one year periods preceding any eligibility date by reason of Union work which takes him from his employment with the Company, and for which he has received leave of absence, or by reason of service with the armed forces of the United States or enforced military training, any such one-year period shall not be considered as one of the one-year periods immediately preceding such eligibility date for the purpose of determining such employee's eligibility for vacation, under the rules laid down in paragraphs 80(b) (1) and 80(b) (2). This shall not have the effect of reducing the number of one-year periods during which he must at some time have been enrolled as a full time employee under paragraphs 80(b) (1) and 80(b) (2)."

Section 80(a) of the foregoing, with some insubstantial changes, is a reenactment of the vacation provisions of November 20, 1942. The explanatory clauses of Section 80(b), however, are new matter. Paragraph 80(b) (2) contains the critical matter to this law suit, that is, the requirement that an employee be enrolled in each of the preceding five one year periods "at some time."

The requirement of continuous enrollment, of course, was waived in the case of veterans and union officers in paragraph (6).

The agreement of October, 1944, relaxed the requirement of employment on the eligibility date for returning servicemen so that they could return after December 1 of the current period and still be entitled to some benefits. It was the 1943 agreement with the 1944 modification that was in effect during the vacation period ending November 30, 1946.

The agreement of February 26, 1946, ratified May 27, 1946, made further alterations in the original vacation privileges. Qualifications for a one week's vacation were altered to requirements of at least 32 weeks' enrollment on the active rolls in the year immediately prior to the vacation eligibility date, enrollment for more than one year but less than five and absences of not more than 35 days, rather than the 45 days earlier established. Provision for a half week vacation was also set up.

The two-week vacation was contingent on the same factors as the one-week vacation, with the further qualification of paragraph 80(b) (2) of the 1943 contract: "* * * enrolled at some time in each of the five preceding years * * *." An employee meeting the test for a two-week vacation but who was not actively enrolled for 32 weeks was still entitled to a one-week vacation.

Clause (g) of the section on vacations provided that the subsections above paraphrased "require, that the employee shall have had at least one and five years' seniority respectively to be eligible."

Provisions similar to that found in paragraph 80(b) (6) of the 1943 contract were included in this agreement. The contract also contained exceptions benefiting veterans who returned to active employment on a date later than the eligibility date. (December 1). The agreement of 1946 governed vacations in 1947.

The contract of August 21, 1947, reenacted virtually all the provisions of the 1946 contract but expanded the coverage of paragraph 80(b) (6) of the 1943 agreement to cover in addition to union officers and serv-

icemen off the active rolls, employees suspended because of reconversion and other dislocations of this period.

The 1948 contract obviated the difficulties giving rise to these actions by permitting veterans to count time in service in order to meet the two-weeks' vacation test of active enrollment at some time during each of the preceding five years.