MONTICUE v. BALTIMORE & O. R. CO.
Civ. No. 6323.

United States District Court
N. D. Ohio, W. D.
June 26, 1950.

Don C. Miller, United States Attorney, Cleveland, Ohio, Marcus L. Friedman, Assistant United States Attorney, Toledo, Ohio, for plaintiff.

Tyler & Rhinefort, Joel S. Rhinefort, Toledo, Ohio, Sydney R. Prince, Jr., Baltimore, Maryland, for defendant.

KLOEB, District Judge.

This matter is before the Court on the motion of the defendant for summary judgment based upon the complaint, answer and affidavit accompanying the motion. The complaint is based upon the provisions of Section 8(c) of the Selective Training and Service Act of 1940, as set forth in Title 50 U.S.C.A.Appendix, § 308(c).

The question is whether, under the law and under the agreement governing vacation and vacation pay in lieu thereof for the benefit of the employees of the defendant, the plaintiff was entitled to one week vacation or two weeks' vacation after his return from the military service and reemployment.

The governing statute provides that returning veterans shall be reemployed upon application and shall be entitled, among other things, to be restored to their former position, the subject of vacations being included in the following paragraph: "(c) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) *shall be considered as having been on furlough or leave of absence during his period of active military service,* shall be so restored without loss of seniority, shall be entitled to participate in insurance or *other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was ordered into such service,* and shall not be discharged from such position without cause within one year after such restoration." (Emphasis supplied.)

Vacation and vacation pay in lieu thereof was established for the craft and class of car men employed by the defendant, of which the plaintiff was one, by a national agreement of December 17, 1941. That agreement did not accord more than six consecutive work days with pay to any employee of this craft and class. The pertinent provision is Article 1 of the agreement, which reads as follows: "1. Effective with the calendar year 1942, an annual vacation of six (6) consecutive work days with pay will be granted to each employee covered by this agreement who renders compensated service on not less than one hundred sixty (160) days during the preceding calendar year."

In claiming two weeks' vacation with pay, plaintiff is asserting a claim under supplemental agreement of February 23, 1945, which amended and supplemented Article 1 above quoted and further provided in Section 2 as follows:

"(A) Effective with the calendar year 1945 an annual vacation of six (6) consecutive work days with pay will be granted to each employee covered by this Supplemental Agreement who renders compensated service on not less than 160 days during the preceding calendar year.

"(B) *Effective with the calendar year 1945 an annual vacation of twelve (12) consecutive work days with pay will be granted to each employee covered by this Supplemental Agreement who renders compensated service on not less than 160 days during the preceding calendar year and who has five or more years of continuous service and who, during such period of continuous service, renders compensated service on not less than 160 days in each of five (5) of such years not necessarily consecutive."* (Emphasis supplied.)

The undisputed facts are as follows:

The plaintiff was employed by the defendant July 19, 1941, as a car man helper and during the first year of his employment, 1941, he performed 137 days of compensated service. The defendant concedes that, had the plaintiff performed 160 days of compensated service during that calendar year, his accrued vacation of six consecutive work days with pay would have been allowed and equivalent compensation paid him in 1942, when he was inducted into the military service, as it was allowed and paid to other employees who had performed not less than 160 days of compensated service in the preceding calendar year, unless they had already received such vacation.

In 1942, on April 4th, he was inducted into the military service. In that year, prior to his induction, plaintiff performed 50 days of compensated service.

Plaintiff continued in the military service until he was discharged on November 19, 1945. He was reemployed on or about February 17, 1946, and in that year performed 214 days of compensated service. He was allowed no vacation in that year because the defendant took the position he was entitled to none under the established rules and practices because he had not performed any compensated services during 1945, as he was then in military service.

In 1947, plaintiff performed 265 days of compensated service, and on the basis of his work during the preceding year (having performed not less than 160 days of compensated service during that year) he was allowed a vacation of 6 days, in accordance with the established rules and practices of the defendant. In 1948, plaintiff performed 239 days of compensated service, and on the basis of his work during the preceding calendar year was allowed a vacation of 6 days. In 1949, plaintiff performed 242 days of compensated service and was allowed 6 days vacation. On the basis of his performance of 242 days of compensated service in 1949, the plaintiff is eligible for a vacation of 5 days in 1950 under the established rules and practices of the defendant.

Section 2 (B) of the supplemental agreement of February 23, 1945 is the basis for the two weeks' vacation contended for by the plaintiff. That section conditions the grant of the longer vacation upon the rendition of compensated service on not less than 160 days during the preceding calendar year. The plaintiff here did not render compensated service on 160 or more days in the year 1945, during which he was absent in military service.

Leaving out of consideration the time spent by plaintiff in the military service of the United States, the year 1949 was but the fourth year of continuous service of the plaintiff, within the meaning of paragraph (B) of Section 2 of the supplemental agreement of February 23, 1945.

There is no provision in the union agreement, or in the established rules and practices of the defendant relating to its employees, by which an employee, such as the plaintiff, in figuring the vacation benefits to which he is entitled, would be entitled to count the time spent on furlough or leave of absence as "compensated service" with defendant under the terms of the contract.

A leading case involving the construction of this statute is that of Fishgold v. Sullivan Drydock & Repair Corp., 1945, 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110, which held that, while this legislation is to be liberally construed, so far as seniority is concerned, Sections 8 (b) and (c) of the Selective Training and Service Act of 1940 do not grant the veteran "an increase in seniority over what he would have had if he had never entered the armed services." 328 U.S. at page 285, 66 S.Ct. 1105, 1111, 90 L. Ed. 1230, 167 A.L.R. 110. The Court further said, with reference to these provisions: "As we have said, these provisions guarantee the veteran against loss of position or loss of seniority by reason of his absence. He acquires not only the same seniority he had; his service in the armed services is counted as service in the plant so that he does not lose ground by reason of his absence. But we would distort the language of these provisions if we read it as granting the veteran an increase in seniority over what he would have had if he had never entered the armed services. We agree with the Circuit Court of Appeals (2 Cir., 154 F.2d 785) that by these provisions Congress

made the restoration as nearly a complete substitute for the original job as was possible." ·

In the case of Aeronautical Industrial District Lodge 727 v. Campbell, et al., 1948, 337 U.S. 521, 69 S.Ct. 1287, 93 L.Ed. 1513, the Supreme Court held with regard to ·the seniority rights of the returned veteran under Section 8 of the Act: "After his discharge from military service in World War II, a veteran was reemployed by his former private employer, in accordance with § 8 of the Selective Training and Service Act of 1940. During his military service, the collective bargaining agreement between his union and the employer had been modified so as to give union chairmen top seniority in the event of layoffs. Within one year after his reemployment, the veteran was laid off temporarily, although union chairmen who had less time with the company were retained. The employer refused to compensate the veteran for the period of the layoff. Held: The veteran's rights under § 8 of the Act were not infringed. 337 U.S. at pages 521–529, 69 S.Ct. at pages 1287–1291, 93 L.Ed. 1513."

In addition to seniority, it has been held that the reemployment provisions of the Act "indicate that the act was intended to protect, among others, such employment benefits as pensions, bonuses, participation in insurance programs, and vacation pay." MacLaughlin et al. v. Union Switch & ·Signal Co., 3 Cir., 1948, 166 F.2d 46.

In Horan v. Todd Shipyards Corp., 13 Lab.Cas. #63,942 (D.C.N.Y.1947), an action was brought under Section 8 (e) of the Selective Service Act of 1940, as amended, for $81.90 alleged to be due plaintiff for pro rata vacation pay.

The labor agreement with the employees required 1,200 actual working hours of regular time in the vacation year ending May 6, 1946 to entitle an employee to a vacation with pay in the year beginning May 6, 1946. The defendant contended that this rule had been applied without any exception to employees on furlough or leave of absence, both at the time plaintiff was inducted and at all times thereafter. There was no rule or practice of the defendant, nor any provision of the labor agreement, providing for pro rata vacation pay for rehired veterans or for any employee returning to work after a furlough or leave of absence. After his return from the service, and in the vacation year May 7, 1945 to May 6, 1946, Horan worked 979½ hours between November 13, 1945 and May 6, 1946. Including overtime, which could not be counted, he worked 1,139 hours between November 13, 1945 and May 6, 1946. The Court held: "A reemployed veteran was not entitled to vacation pay under Section 8 (c) of the Act providing for his participation in insurance or other benefits offered by his employer pursuant to established rules and practices relating to employees on furlough or leave of absence, *where the right to vacation pay was governed by the terms of a union contract which required employment for a designated number of hours worked as a- prerequisite for vacations and the veteran failed to meet that requirement."* (Emphasis supplied.)

The case of Woods v. Glen Alden Coal Co., D.C.Pa.1947, 73 F.Supp. 871, was a consolidation of three cases brought by returned and reemployed veterans for benefits in the way of vacation compensation under the provisions of Section 8 (c) of the Selective Service Act of 1940, as amended. All three were restored to their positions with the same seniority status and pay as guaranteed by the law. The problem before the Court involved the claim of the plaintiffs for vacation compensation for the year June, 1945 to June, 1946.

The agreement covering this period provided: "Vacation compensation for the employment period subsequent to June 15, 1945 shall be at the rate of * * * $100 * * * per year for each employee and payment of the full amount of $100 per year shall be predicated on an employee having worked in each of the twenty-four semi-monthly pay periods in the year ending June 15, 1946." 73 F.Supp. at page 873.

The Court said on this subject:

"Section 308(c) requires that plaintiffs be considered as having been on furlough or leave of absence during their military service. 'Plainly he still had his "position" when he was inducted and in the same

sense he retains it though a lay-off interrupts the continuity of work in the statutory period.' Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, at page 288, 66 S.Ct. 1105, 1112, 90 L.Ed. 1230, 167 A.L.R. 110.

"Plaintiffs are entitled under Section 308 (c) to any 'benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted * * *.' The claim is for vacation compensation for the year 1945–46. Plaintiff McArdle was inducted August 11, 1942; plaintiff Cavanaugh November 27, 1943; plaintiff Woods June 1945. The rules and practices in effect at the time of their respective inductions made no provision whatever for any vacation compensation for any employee for the year 1945–46. That period was not provided for until the agreement of June 7, 1946, a date subsequent to the discharge and reemployment of all three plaintiffs.

"Words are to be given their natural, ordinary and familiar meaning unless Congress has definitely indicated the words should be construed otherwise. The plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow or strained construction. Western & Southern Life Ins. Co. v. Huwe, 6 Cir., 116 F.2d 1008.

"The separate provisions of the Act are to be construed as part of an organic whole giving each as liberal a construction for the benefit of the veteran as a harmonious interplay of the separate provisions permits. Fishgold v. Sullivan Drydock & Repair Corp., supra at page 285 of 328 U.S., at page 1111 of 66 S.Ct., 90 L.Ed. 1230, 167 A.L.R. 110." 73 F.Supp. at page 874.

"There is language used in some of the cases to the effect that 'his service in the armed services is counted as service in the plant so that he does not lose ground by reason of his absence'. Fishgold v. Sullivan Drydock & Repair Corp., supra at page 285 of 328 U.S., at page 1111 of 66 S.Ct., 90 L. Ed., 1230, 167 A.L.R. 110. *The court was there however speaking only as to seniority rights*. In the same opinion, it was said 'a lay-off interrupts the continuity of work in the statutory period'. Fishgold v. Sullivan Drydock & Repair Corp., supra at page 288 of 328 U.S., at page 1111 of 66 S.Ct., 90 L. Ed. 1230, 167 A.L.R. 110. As to the applicability of the language 'his service in the armed services is counted as service in the plant * * *.' and the fact that it applies only to seniority, see Fishgold v. Sullivan Drydock & Repair Corp., supra at pages 285, 289, of 328 U.S., at pages 1113 of 66 S.Ct., 90 L.Ed., 1230, 167 A.L.R. 110, where the legislative history of the words 'shall be considered during the period of service in such forces as on furlough or leave of absence' and the words 'insurance or other benefits' is discussed by Mr. Justice Douglas.

"The question of vacation pay has been decided in accord with our holding herein in several cases. Dwyer v. Crosby Co., D.C. W.D.N.Y.1947, 69 F.Supp. 384, 387 ('However sympathetic one may be with those who served * * * he can not read into the statute something which it does not say and which gives no basis for the claim that it means something not expressed in it.'); MacLaughlin v. Union Switch & Signal Co., D.C.W.D.Pa.1947, 70 F.Supp. 744, 747 ('carried to its logical conclusion, the plaintiffs' contention should go to the extent of claiming full pay from defendants while they were in the Army * * *'); see same case D.C., 72 F.Supp. 284; see by analogy Huffman v. Norfolk & Western R. R. Co., D.C.W.D.Va.1947, 71 F.Supp. 564, at page 567 (right to step rate pay); Harvey v. Braniff International Airways Inc., D.C.N. D.Tex.1947, 70 F.Supp. 206 (right to base pay); Cf. McLaughlin v. Retherford, 1944, 207 Ark. 1094, 184 S.W.2d 461 (right to pension); Mentzel v. Irving & Diamond t/a Elizabeth Iron Works, D.C.N.J., decided July 1, 1947 [1]." 73 F.Supp. at pages 874, 875. (Emphasis supplied.)

The case of Huffman et al. v. Norfolk & Western Ry. Co. et al., D.C.Va.1947, 71 F. Supp. 564 was an action brought by the

1. No opinion for publication.

named plaintiff and others against the defendant railway company and others on claims under the Selective Training and Service Act of 1940, Section 8, and came before the Court on the motion by the defendant for summary judgment, which motion was granted.

All of the plaintiffs, prior to their entry into military service, were record clerks in the Car Service Department of the railway. After their discharge from military service, they were promptly restored to their former positions by the railway, at salaries greater than they were receiving when they entered the military service. Conceiving that they were entitled to greater pay, the plaintiffs and a number of others similarly situated presented their claims, which plaintiffs assert in this action, to Selective Service Headquarters. Upon consideration of the claim of one of them, which was typical of all the claims, it was there concluded "that the veteran does not have a valid claim."

The Court in this case held:

"2. 'Seniority' of railroad employees begins when an employee's pay begins and continues so long as he is in the employ of the railway, regardless of whether he be laid off, on vacation, or by the terms of the Selective Service Act in the military service, and results in certain preferential treatment of employees based upon their length of service. Selective Training and Service Act of 1940, § 1 et seq., 50 U.S.C.A.Appendix, § 301 et seq."

"3. 'Step-rate pay' system under which railroad clerks were paid on an ascending scale on basis of experience in clerical work did not confer a 'seniority right' within the Selective Service Act, so as to entitle record clerks under the system to credit for time spent on non-clerical military duty. Selective Training and Service Act of 1940, § 8, 50 U.S.C.A.Appendix, § 308."

The Court in this case cites and relies upon Dwyer v. Crosby Co., MacLaughlin v. Union Switch and Signal Co., and Fishgold v. Sullivan Drydock & Repair Co., supra.

In the case of MacLaughlin et al. v. Union Switch & Signal Co., 3 Cir., 1948, 166 F.2d 46, 48, the plaintiffs were members of an electrical workers' union which had negotiated with the defendant companies labor agreements, all of which contained vacation provision. The claim of the plaintiff Borland is taken as representative of the others whose claims were adjudicated. He was inducted into the United States Army on October 3, 1942, having previously worked for more than five years for the Westinghouse Airbrake Co. He was honorably discharged October 8, 1945, and resumed active work on October 18, 1945. His contention was that he was entitled to vacation pay not only for the work he performed for Westinghouse in 1942 (for which, had he not been inducted, he would have been paid in 1943) but also in 1945, the year of his return. The agreement provided that employees with one year or more but less than five years of service shall be allowed a vacation of one week, and employees of five years or more service shall be allowed a vacation of two weeks. In dismissing the complaints, the Court said:

"It is doubtless true that a reason for the inclusion of vacation provisions in employment contracts is to afford the opportunity for rest and relaxation. Such provisions, however, perform a second function as well. In Re Public Ledger, 3 Cir., 1947, 161 F.2d 762, 768, we quoted and adopted the statement of the United States Circuit Court of Appeals for the Second Circuit, In re Wil-Low Cafeterias Inc., 111 F.2d 429, that 'a vacation with pay is in effect additional wages.' * * *

* * * * * *

"Bearing in mind, therefore, that the statute was intended to place veterans on the precise point of the vacation escalator which they would have occupied had they kept their positions continuously during the war, we shall examine the contractual provisions.

* * * * * *

" * * * More logical, and more in keeping with the pronouncements in Fishgold v. Sullivan Drydock & Repair Corp., 1946, 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110, and Trailmobile Co. v. Whirls, supra, [331 U.S. 40, 67 S.Ct. 982, 91 L.Ed. 1328] is it to interpret these contracts as providing that, in the event of induction or enlistment, the veteran

would be entitled to claim those vacation rights, which he had earned in his last year of service with the company, at the time when he resumed that service. In other words, we interpret the contracts in the light of the statute to provide that, for the purpose of receiving vacation privileges accrued in active service with the company, the law tolled the running of the calendar year so as to keep the veteran 'in the same situation as if he had not gone to war.' The year of return, then, for this purpose alone, becomes, under the 1942 contract provisions, the 'calendar year in which allowed' and, under the 1943 and 1946 contract provisions, the 'current calendar year.'

"Consequently, the vacation pay claim of each plaintiff would mature and become payable upon his timely resumption of active employment by the company, and would be computed in accordance with the contract provisions by multiplying his average earned rate per hour in the year of induction by the average weekly hours worked by all employees (including plaintiff) in that year.

This conclusion eliminates any claim to vacation rights for the calendar year preceding the year of return. * * *" (166 F.2d at pages 48, 49, 50.)

In the case of Dwyer et al. v. Crosby Co., 2 Cir., 1948, 167 F.2d 567, the Court held:

"1. Under re-employment provision of Selective Service Act that returning veteran is entitled only to such benefits as are offered by employer pursuant to established rules or practices relating to employees on furlough or leave of absence, it was unlawful to attempt by contract to provide that veteran should be deemed not to be in employment of employer while he was serving in Army, but *it was not unlawful to deny him vacation pay unless it was an established rule of employer to give vacation pay to those who were on leave of absence.* Selective Training and Service Act of 1940, § 8(b) (B), (c), 50 U.S.C.A. Appendix, § 308(b) (B), (c)."

"2. Where contract between employer and union provided for vacation pay to each employee who prior to July 1, 1946 had been in employ of employer for at least 26 weeks but did not indicate that such person might include any part of time during which employee had been on leave of absence, employee who entered Army in April, 1943, and was restored to former position in January, 1946, was not entitled to vacation pay. Selective Training and Service Act of 1940, § 8(b) (B), (c), 50 U.S.C.A. Appendix, § 308(b) (B), (c)." (Emphasis supplied.)

The facts in this case indicate that the petitioner Dwyer was a member of the United Steel Workers Union and had, from July 21, 1941, been in the employ of the respondent as a stamping operator; that, on the 16th of April, 1943, he enlisted in the United States Army. He was honorably discharged on December 20, 1945, and on January 7, 1946 was restored to his former position. He demanded one week vacation pay which Article VII of the union contract gave to all those "in the employ" of the company for twenty-six weeks before July 21, 1946, which the respondent refused. The respondent's position was that the word "employ" as was used in Sec. 1 of Article VII of the contract quoted in the margins means only "time worked"; and in support of this it relied on the last two sentences of the section, which speak of "employees who are working," and of a past period, during which the men were on strike, as one "to be considered time worked." This view was taken by the District Judge and the complaint dismissed.

Article V of the contract referred only to the subject of seniority. In commenting upon this, the Court said, 167 F.2d at page 569: "The article relates only to rights of seniority, and we should have no warrant for extending it in any way to cover vacations; obviously *the considerations which might make it proper that service in the Army should not affect a man's seniority are utterly different from those which should count in computing vacations.*" (Emphasis supplied.)

In the case of Siaskiewicz et al. v. General Electric Co., 2 Cir., 1948, 166 F.2d 463, veterans and a former member of

merchant marine returned to work with former employer in July, August or September of 1945 and 1946. Employer's contract with union provided that employees not registered on payroll were not entitled to vacation and that if such employees were re-engaged with continuity of service they would be required to work six months before receiving vacation.

It was held that the employees were not entitled to vacation pay for calendar year during which they returned to work and that denying them such pay would not discriminate against them or constitute a failure to restore to former position, or position of like seniority, status and pay, or a failure to restore them without loss of seniority, under the Selective Training and Service Act of 1940, Section 8.

The Court also held that vacation rights were "other benefits" within the meaning of the statute, stating on this subject as follows, 166 F.2d 463, at pages 465, 466:

"The language of the Act itself answers this contention. It provides that a person restored to his position 'shall be entitled to participate in insurance or *other benefits* offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted.' Since vacation rights are not pay unless they are for work actually done, and since they are not merely a perquisite of seniority, they must fall under the heading of 'other benefits.' Hence, *under the language of the Act, appellants must be treated like nonveteran employees on furlough or leave of absence.* But non-veteran employees of appellee who were on leave of absence for more than half a year would not be entitled to vacation pay for that year. Therefore, appellants are not so entitled. To grant them such pay would be to discriminate in favor of them as veterans, and against non-veteran employees. That discrimination in favor of veterans is as foreign to the purposes of the Act as discrimination against them, the Supreme Court decided when it passed on the issue of 'super-seniority,' Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66

S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110; Trailmobile Company v. Whirls, 331 U.S. 40, 67 S.Ct. 982, 91 L.Ed. 1328." (Emphasis supplied.)

In Dougherty v. General Motors Corporation, 3 Cir., 1949, 176 F.2d 561, the plaintiff brought an action to determine whether under the provisions of the Selective Training and Service Act of 1940, and of the union contract involved, he was entitled as a reemployed service man to vacation pay. The District Court denied plaintiff vacation pay for the year of his return from the service, and he appealed. The Court of Appeals affirmed the order of the District Court on the ground that the contract provisions pertaining to vacations were valid, since they did not place veterans in a position inferior to that of nonveterans on leave of absence.

The Court held the 1946 contract between union and employer basing vacation benefits on 1945 gross earnings of employees, which was so worded that veteran returning to work in June, 1946, was not entitled to vacation pay for 1946, although otherwise eligible, was not illegal under the Selective Service Act, since the contract did not place the veteran in a position inferior to that of nonveterans on leave of absence. Citing Siaskiewicz v. General Electric Co., 2 Cir., 1948, 166 F.2d 463, and Dwyer v. Crosby Co., 2 Cir., 1948, 167 F.2d 567.

The Court said on this subject, 176 F.2d at page 564: "* * * However desirable and feasible some modification of the provision by the parties themselves might have been, *we cannot impose as a legal requirement a vacation provision other than that on which the bargainers agreed,* as long as the intent and operation do not place veterans in a position inferior to that of nonveterans on leave of absence." (Emphasis supplied.)

In the case of Brown v. Watt Car & Wheel Co., D.C. S.D.O. 1949, 91 F.Supp. 570, the sole issue decided by the Court was whether the veteran was entitled to two weeks' vacation during the first year of his postwar employment with the company for which he worked prior to his induction into the armed service.

The facts in this case found by the Court were that the plaintiff was employed from March 16, 1941 to December 9, 1942, when he was inducted into the army. He was discharged December 10, 1945, and was restored to his former position, pay and seniority on January 4, 1946.

At the time of plaintiff's induction into the army, defendant's employees were not entitled to any vacation with pay, nor was there any two weeks' vacation with pay until the union contract in 1945. The Court held: "A reemployed veteran is not entitled to have the time spent by him in the armed forces considered in determining his eligibility for vacations pursuant to a union agreement, where under employer's rules and practices an employee's furlough or leave of absence always is excluded in determining his right to vacations."

The Court further held that the plaintiff failed to establish any right to an additional one week's vacation and dismissed the action. This case was affirmed June 1, 1950 by the Sixth Circuit Court of Appeals. 182 F.2d 570.

The case of Cushnier v. Ford Motor Co., D.C., 89 F.Supp. 491, was a consolidation of three actions brought by veterans under the Selective Training and Service Act of 1940 for vacation benefits. All of the plaintiffs received one week vacation with pay during certain given years, and all of them contended that, because each had seniority of at least five years, they were entitled to one week more of vacation, or one week's pay in lieu thereof, for each of those given years. The questions before the Court were:

1. Can plaintiffs recover a second week's vacation pay under the contracts between defendant and the union?

2. If not, may they recover under the Act, on the theory that such interpretation of the contracts renders them void as discriminating against plaintiffs?

The Court found that, under the basic contract, the test for two weeks' vacation was twofold:

1. At least five years seniority, and

2. Enrollment on the active rolls at "some time" in each of the preceding five years.

The defendant claimed that none of the plaintiffs met the second test. The Court said:

"Of course the provisions of the Act protect the absent serviceman's seniority and he progressed as though on an 'escalator' (Fishgold v. Sullivan Corp., supra) so that seniority continued to accrue to him while away. In the cases at bar the veterans, by adding the time spent in service, admittedly had at least five years' seniority during the years in question. However, the terms of the contract are clear and unambiguous, and we find that *since none of said plaintiffs was on the active rolls in each of the five preceding years even by adding all time worked before entry into service, the veterans received what they were entitled to under the contract.*

"It is enlightening to note that a National War Labor Board member who was later selected as impartial referee by defendant and the union held to the same effect, to-wit that the employees were not entitled to two weeks' vacation where they did not have five years' actual enrollment even by tacking pre-service to post-service time. Furthermore, Dunn and Salciccioli instituted separate grievance proceedings to obtain the two weeks' vacation which were denied and from which denials no appeal was taken. Correspondence between the referee and the company and union also corroborates our construction of the contracts." (Emphasis supplied.)

Under the second question, as to whether the plaintiffs may recover under the Act on the theory that the contracts are void as discriminating against the plaintiffs, the Court discussed a number of cases and then held that the contract was not void as discriminating against the plaintiffs.

This case commented on the case of Mentzel v. Diamond, 3 Cir., 1948, 167 F.2d 299, cited in support of the plaintiff's position. This is the only case in point cited by the Government, and, so far as it is in conflict with our conclusion, is contrary to the

weight of authority on the subject. Cf. Dougherty v. General Motors Corporation, supra, 3 Cir., 1949, 176 F.2d 561.

Our conclusion is that, in view of the above law and the admitted facts herein, the plaintiff is not entitled to two weeks' vacation, as alleged in the complaint.

We can find nothing in the legislative history of the Bill which throws additional light on the meaning of the words of the Act here involved or compels a different conclusion. Representative May, who had charge of the Bill on the floor of the House, stated as to its purpose: "I may say that the chief purpose of the amendment is to preserve the seniority rights of the thousands and hundreds of thousands of railroad employees and other employees of that character who have certain seniority privileges on the railroads. In other words, we put them on furlough during the time they are in the service and they will even be permitted to count this time on the question of their retirement." (Vol. 86, Cong. Rec. 11702, Sept. 7, 1940)

The Committee Report of the Senate also stated, as to its purpose: "The Congress, in this bill, has declared as its purpose and intent that every man who leaves his job to participate in this training and service should be reemployed without loss of seniority or other benefits upon his return to civil life." (S. Rep. No. 2002, 76th Cong., 3d Sess., p. 8)

Representative May further explained the amendment of Sec. 8 (c), stating that the employees should be permitted to count the time of absence in the service "on the question of their retirement". (p. 11702, col. 2). The only reference to vacations or furloughs was made when a member of the House pointed out that many industrial plants carry group insurance and "under those contracts they continue their participation while a man is on vacation or on furlough", and Representative May answered that this legislation "would continue them in force and that is the very purpose of the legislation". (p. 11702, col. 2) There was apparently no further mention or discussion on the floor of the House of the meaning of the words "other benefits" in the language of the Bill. (See opinion of Mr. Justice Douglas on the legislative history, Fishgold v. Sullivan Drydock & Repair Corp., supra, 328 U.S. 275, on page 289, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110.

Defendant's motion for summary judgment will be sustained.

We are of the opinion that, under the provisions of Rule 52 of the amended Federal Rules of Civil Procedure, 28 U.S.C.A., the foregoing opinion sufficiently sets forth the findings of fact and conclusions of law in this case. However, if counsel upon either side desire categorical findings of fact and conclusions of law, they may be prepared and submitted to the Court within ten (10) days.