FREEMAN v. GENERAL MOTORS CORPORATION.

HIXSON v. GENERAL MOTORS CORPORATION.

HELCHER v. GENERAL MOTORS CORPORATION.

Nos. 540–542.

United States District Court
E. D. Michigan.
July 29, 1949.

528

Edward T. Kane, United States Attorney, James S. Soltesz, Assistant United States Attorney, Detroit, Mich., for plaintiffs.

Henry M. Hogan, Detroit, Mich. (Harry S. Benjamin, Jr., Detroit, Mich. of counsel), for defendant.

LEVIN, District Judge.

Three petitions consolidated for hearing, seek enforcement of veterans' rights under Section 8[1] of the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix, § 308. Each of the veterans was an employee in the AC Spark Plug Division of General Motors Corporation at Flint, Michigan.

Petitioner Helcher alleges that he was not restored "to a position of like seniority, status, and pay" within the purview of Section 8(b) of the Act, and the question with respect to this petitioner is whether the respondent's "circumstances have so changed as to make it impossible or unreasonable to do so."

Petitioners Hixson and Freeman allege that they were "discharged" without cause within one year after restoration to their former positions in violation of Section 8(c) of the Act.

Prior to the outbreak of World War II,

1. The relevant provisions of Sec. 8 are:
"(a) Any person inducted into the land or naval forces under this Act for training and service, who, in the judgment of those in authority over him, satisfactorily completes his period of training and service under section 3 (b) shall be entitled to a certificate to that effect upon the completion of such period of training and service, which shall include a record of any special proficiency or merit attained. * * *

(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position, other than a temporary position, in the employ of any employer and who (1) receives such certificate, (2) is still qualified to perform the duties of such position, and (3) makes application for reemployment within ninety days after he is relieved from such training and service or from hospitalization continuing after discharge for a period of not more than one year—
* * * * * * *
(B) If such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so;
* * * * * * *
"(c) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) shall be considered as having been on furlough or leave of absence during his period of training and service in the land or naval forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration. * * *"

the AC Spark Plug Division of the respondent manufactured automobile accessories and had about 950 salaried employees and approximately 6000 hourly rated employees. As this division commenced the manufacture of war materials in 1941, it began to increase the number of its employees until it reached a peak at the close of the war of 2500 salaried and 17,000 hourly rated employees. With such a tremendous expansion it became necessary to augment its supervisory employees and a number of the old as well as new employees, including the three petitioners, were rapidly promoted from positions of hourly rated employees to supervisory positions on a salaried basis.

The pertinent facts with respect to the employment of each of the petitioners are as follows:

Petitioner John H. Helcher was hired by respondent on April 9, 1941, as a floor inspector in training, at an hourly rate of pay. On March 16, 1943, he was promoted to the position of foreman in the inspection department at a stated salary plus bonuses. He occupied this position until February 21, 1944, when he left respondent's employ to enter military service. On February 4, 1946, he received his honorable discharge, and on April 9, 1946, he applied for restoration of his position. He was not restored to his former position but he was re-employed in the position of floor inspector at an hourly rate which resulted in a reduction of compensation. On October 1, 1946, he left the employ of respondent.

Petitioner Marion Grant Hixson was hired by the respondent on June 4, 1941, as a floor inspector in training, at an hourly rate of pay. On December 21, 1941, he became an assistant foreman in the inspection department at an hourly rate. On March 16, 1943, he was promoted to the position of foreman in the inspection department at a monthly salary, and he held this position until his induction into service on July 10, 1945, at which time he was receiving a monthly salary plus bonuses. He received his honorable discharge from military service on December 19, 1945, and on December 26, 1945, upon his request, he was reinstated to the position he vacated at a monthly salary rate. On April 1, 1946, he was demoted to the position of floor inspector at an hourly rate which resulted in reduced compensation. On September 27, 1946, he left the employ of respondent.

Petitioner Lloyd F. Freeman was hired on December 28, 1942, as a standard tool inspector at an hourly rate of pay. On July 26, 1943, he was promoted to the position of customer contact respresentative at a monthly salary. He occupied this position at the time of his induction into the Armed Forces on February 12, 1944. He received his honorable discharge from the military service on November 1, 1945, and requested re-employment. On January 14, 1946, he was re-employed but since the position of customer contact man had been eliminated he was given the position of inspection foreman which was a position of equal seniority, status and pay at a monthly salary rate. On April 1, 1946, he was demoted to the position of stock handler at an hourly rate of pay. On April 29, 1946, he was temporarily laid off and thereafter on May 13, 1946, he refused to return to respondent's employ.

At the time petitioners were appointed to their supervisory positions, and at the time of their induction into the Armed Forces, there was no contract between the union and the AC Spark Plug Division covering salaried employees. They had no negotiated "seniority" within the sense of that word as it is generally used in labor relations circles. The term seniority is not precisely defined in the Act and there are many variations in the use of the seniority principle determined by the particular contract or practice in effect in each case. Each salaried employee here had an established "length of service" date, fixed and determined in accordance with company policy as set out in a pamphlet entitled, "You and Your Job" and distributed to all salaried employees. The pertinent statements in the booklet are as follows:

"The question of selecting those employees to be 'laid-off,' when circumstances make it necessary involves two considerations: one, the effect the lay-off will have on the employee; and the other, the effect it will have on the business. Fundamen-

tally, it is most desirable to effect those lay-offs that will recognize the importance of length of service in building experienced personnel and at the same time, maintain the efficiency of the operation. To this end the following factors are given full consideration, in addition to the basic factors of ability, length of service and value to the operation; family responsibilities, loyalty, competence and potentiality for promotion. The relative weight of these factors is to be determined by the circumstances surrounding the individual case.

\* \* \* \* \* \*

"Continuous service for all salaried employees constitutes all employment including time worked on an hourly rate basis with General Motors or its wholly owned subsidiaries \* \* \*."

While the statements of policy and definitions in the pamphlet do not constitute enforceable seniority rights for salaried employees, such statements and definitions clearly indicate that, exept for the brief period of time hereinafter referred to, total length of service or plant seniority was a factor in making reductions in salaried personnel.

As the close of the war became imminent and war production was curtailed, the respondent was met with the necessity of reducing and readjusting its personnel to make room for veterans who were returning during 1945. The Director of Selective Service entrusted with the administration of the Act, issued the following instruction: "A returning veteran is entitled to reinstatement in his former position or one of like seniority, status and pay, even though such reinstatement necessitates the discharge of a non veteran with greater service."

This directive was supported until March 4, 1946, by the opinion of the United States District Court for the Eastern District of New York in Fishgold v. Sullivan Drydock & Repair Corp. et al., 62 F.Supp. 25. On that day the United States Circuit Court of Appeals (2) in reviewing the District Court decision, expressed a contrary view of the law. Fishgold v. Sullivan Drydock & Repair Corp. et al., 2 Cir., 154 F.2d 785, affirmed 328 U.S. 275, 66 S.Ct. 1105, 90 L.

Ed. 1230, 167 A.L.R. 110. The directive of the Selective Service and the opinion of the United States District Court before reversal, placed the respondent in a dilemma. On the one hand, it had a valuable pool of old employees who were non veterans and who were, in the absence of veterans' rights as defined in the earlier interpretations, entitled to retain their supervisory positions on the basis of total plant service. Many of these supervisory positions had been created as a result of the war effort, and a number of the older employees had been promoted to fill them. On the other hand, it was faced with the problem of absolute seniority for the returning veteran. In order to provide a method of decreasing the non veteran force on the most equitable basis and to retain the good-will of its older employees, the respondent, in January, 1945, demoted a few non veterans on the basis of departmental or job seniority.

In February, 1946, some layoffs of non veterans occurred and these were again made on the basis of departmental or job seniority, but veterans were not affected, as absolute priority or super-seniority was still being accorded them.

The drastic reduction in respondent's force which affected the petitioners herein was not made until the end of March, 1946. A strike was called in November, 1945, of the hourly rated production and maintenance employees, and during its continuance the respondent was unable to appraise and adjust its requirements of supervisory employees to conduct its peacetime business. The strike was settled in March, 1946, and with the resumption of normal operations the respondent made substantial reductions to accord with its normal peacetime production.

The rights to be accorded veterans under the Act had now been more clearly defined. As hereinbefore stated, early in March, 1946, the United States Circuit Court of Appeals (2) in Fishgold v. Sullivan Drydock & Repair Corp. et al., supra, reversed the previous interpretation of the Act and held that [154 F.2d 788] "The phrase, 'like seniority' means the 'same seniority' as before; and it necessarily precludes any gain in seniority."

Accordingly, the respondent proceeded to make its reductions among salaried employees, giving consideration to total plant service and qualification for the job. It was determined that forty-four inspection foremen would be required after March 31, 1946, in the division affecting the petitioners. Of the forty-four foremen selected each had a plant seniority of January 24, 1941, or earlier. None of the petitioners had total length of service or plant seniority sufficient to enable him to qualify in this group. On April 1, 1946, Hixson and Freeman were demoted to hourly rated positions previously held by them and for which they qualified on the basis of plant service. Helcher who applied for restoration after this date was not restored to his former position but was offered a position at an hourly rate of pay.

 There can be little doubt that the respondent was within its rights in effecting layoffs and demotions when production of its war materials ceased, since it would be unreasonable in the light of its changed conditions to compel it to create jobs for either veterans or non veterans. The court sees no merit in the contention of the United States Attorney, representing the petitioners, that they were entitled as a matter of right to have the March, 1946, reductions carried out on the basis of job seniority, because the respondent had used this for a period of time in effecting reductions among non veterans.

Certainly the respondent was not foreclosed from adopting a subsequent authoritative interpretation of the Act. If the respondent, because of a mistake of law, gave the petitioners benefits greater than those contemplated by the pertinent legislation, they cannot complain because of compliance now with the mandate of the Supreme Court. Fishgold v. Sullivan Drydock & Repair Corp. et al., supra. In the language of that court: [328 U.S. 275, 66 S.Ct. 1111] "* * * these provisions guarantee the veteran against loss of position or loss of seniority by reason of his absence. He acquires not only the same seniority he had; his service in the armed services is counted as service in the plant so that he does not lose ground by reason of his absence. But we would distort the language of these provisions if we read it as granting the veteran an increase in seniority over what he would have had if he had never entered the armed services. * * * No step-up or gain in priority can be fairly implied."

The court is of the opinion that the reductions in force affecting the petitioners, as carried out by the respondent, did not violate any of their rights under Section 8 of the Selective Training and Service Act.

The petitions of the three veterans for reinstatement and loss of wages are accordingly denied.