**GREGORY et al. v. LOUISVILLE & N. R. R.**

No. 1835.

United States District Court
W. D. Kentucky, at Louisville.
Sept. 15, 1950.

Harry M. Leet, Dept. of Labor, Washington, D. C., Matthew O. Henchey, Asst. U. S. Atty., Louisville, Ky., for plaintiffs.

C. S. Landrum, Lexington, Ky., J. P. Hamilton, Louisville, Ky., for defendant.

Robert E. Hogan, Louisville, Ky., Richard R. Lyman, Toledo, Ohio, for interveners.

SHELBOURNE, District Judge.

This action was instituted February 8, 1950, by plaintiffs Harry Gregory, Charles Van Vactor, and Casper Waters, suing for themselves and all employees similarly situated, defendant Louisville and Nashville Railroad Company, for restoration of their respective seniority rights and damages, which plaintiffs claim to have sustained as a result of the defendant's alleged violation of the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 301 et seq.

The defendant, Railroad Company, by its answer denied any violation of the Act and any unauthorized impairment in the seniority status of plaintiffs and other employees similarly situated.

May 3, 1950, the System Federation No. 91 of the Railway Employes' Department of the American Federation of Labor filed its motion to be permitted to intervene and tendered therewith its answer to the petition of plaintiffs.

The System Federation is the duly and legally selected representative through which the Unions representing various crafts of railroad employees of defendant bargain collectively under the provisions of the Railway Labor Act, Title 45 U.S.C.A. § 151 et seq.

A trial was had to the Court on the sixth day of September 1950, the evidence consisting in the main of a stipulation filed by the plaintiffs, the Railroad Company and the intervening System Federation No. 91.

Oral proof was heard, none of which contradicts the facts appearing in the stipulation. The Court finds separately the facts and conclusions of law.

### Findings of Fact.

1. The facts as contained in the stipulation of the parties filed herein September

1, 1950, are adopted by the Court and made a part hereof, without being copied. They consist of ten typewritten pages and it is thought unnecessary to copy them in full in this memorandum.

2. The plaintiff, Harry Gregory, was first employed by defendant, Louisville and Nashville Railroad Company, as a laborer May 1, 1937. He continued in the status of a laborer until his induction into the military service May 13, 1942; was honorably discharged in October 1945, made timely application for reemployment, was reemployed shortly prior to November 25, 1945, as a laborer and on the last named date was promoted to machinist helper and his seniority in his new position was fixed as of July 3, 1942, the date on which B. Harper, a laborer with less seniority than Gregory was promoted and began to work as a machinist helper.

Gregory's name upon the seniority roster of machinist helpers was placed immediately ahead of that of Harper.

3. Plaintiff Charles Van Vactor was first employed by defendant as a laborer May 1, 1937. He continued in the status of a laborer until his induction into the military service May 13, 1942, was honorably discharged September 8, 1945, made timely application for reemployment, was reemployed shortly prior to November 19, 1945, as a laborer and on November 19, 1945, was promoted to a machinist helper and his seniority as a machinist helper was fixed as June 8, 1942, the date on which E. L. Van Vactor was promoted to and began to work as a machinist helper. Charles Van Vactor's name upon the seniority roster as a machinist helper was placed immediately ahead of E. L. Van Vactor.

4. Plaintiff Casper Waters was first employed by the defendant as a laborer January 15, 1937. He continued in the status of laborer until his induction into the military service June 30, 1941, from which service he was honorably discharged December 31, 1945, made timely application for reemployment, was reemployed shortly prior to March 27, 1946 as a laborer and on March 27, 1946, was promoted to a machinist helper and his seniority in his new position was fixed as July 20, 1942, the date on which G. H. Welker, a laborer with less seniority than Waters was promoted to and began work as a machinist helper.

Waters' name upon the seniority roster of machinist helpers was placed immediately ahead of that of G. H. Welker.

5. None of the plaintiffs had any seniority as machinist helpers at the time of his induction into the military services.

6. Plaintiffs Gregory, Van Vactor and Waters each left positions as laborers in the employ of the defendant Railroad Company, other than temporary positions, in order to enter the armed forces.

There is no question in this case as to the qualification and timeliness of application for reemployment by the plaintiffs.

7. During the absence of the plaintiffs, while in military service, a number of individuals were assigned to positions as machinist helpers and acquired machinist helper seniority as of the date they began work as such machinist helpers. Some of such individuals possessed more laborer's seniority than did the plaintiffs, some less and some had no laborer's seniority at all. The retroactive machinist helper seniority dates assigned to plaintiffs were the dates on which a laborer with less seniority standing than the plaintiff in each instance was promoted to the position of helper.

8. The classification of laborer and that of machinist helper in defendant railroad's employment fall within separate crafts or classes, and the wages, rules and working conditions of employees within each of said classifications, including seniority and seniority rights, are established and governed by completely separate and distinct collective bargaining agreements between the Railroad Company and separate and distinct statutory collective bargaining representatives for each of the separate crafts or classes within which such job classifications fall.

The classification of laborer falls within the craft or class known as the unskilled craft while that of machinist helper comes within the craft or class known as machinists, and is a skilled craft.

An employee of the Railroad Company promoted from a position of laborer to that

of machinist helper goes from a craft or class into a separate and distinct craft or class and has a different representative for the purpose of collective bargaining and becomes subject to a different and distinct collective bargaining agreement.

Seniority and seniority rights of machinist helpers within that classification are separate and distinct from seniority and seniority rights of laborers within the laborer class. Seniority of machinist helpers within that class is wholly separate from that applicable to laborers. Machinist helpers have seniority rights among machinist helpers, laborers have seniority rights among laborers and neither type of seniority conveys any seniority rights within the other class.

9. The collective bargaining agreements applicable to machinists, their apprentices and helpers in the Railroad Company's employ contain no provision relating to the promotion of laborers to positions of machinist helpers, or requiring that machinist helpers be drawn from the ranks of laborers.

The collective bargaining agreement effective June 1, 1942, applicable to laborers or the unskilled craft contained this paragraph—"Employees covered by the Firemen and Oilers' Agreement will be given consideration for promotion to positions under the Shopmen's Skilled Agreement. Such promotions will be based on ability, merit and seniority—the Management to be the judge and no partiality to be shown."

The parties have stipulated and the Court finds as a fact that at no time material herein has the above-quoted agreement been intended, interpreted or applied by the parties as requiring the Railroad Company to fill vacant or new machinist helper positions by the promotion of laborers in the order of their laborer's seniority.

On numerous occasions, before, during and after the period of plaintiffs' absence in the armed forces, the defendant Railroad Company employed as machinist helpers persons who were not working either as laborers or as machinist helpers and who held no seniority in either classification, even though there were then available laborers who might have been, and some of whom subsequently were, promoted to positions as machinist helpers. Some of the laborers promoted to machinist helpers before, during and after plaintiff's absence in the armed forces, were not promoted in order of their seniority as laborers.

10. Under the collective bargaining agreements governing seniority and seniority rights among machinist helpers, as intended, interpreted and applied by the parties, it is provided that seniority as a machinist helper should commence on the date on which an employee first performed service as a regularly assigned machinist helper at his point of employment.

11. The assignment to plaintiffs and other reemployed veterans of retroactive seniority as machinist helpers, antedating the date on which they first performed work as regularly assigned machinist helpers, was in contravention of the applicable agreements as they were intended, interpreted and applied by the parties to said agreements. At no time has any machinist helper in the employ of the Railroad Company, other than a returned veteran of World War II, been intentionally accorded seniority antedating the date on which he first performed service as a regularly assigned machinist helper at his point of employment.

12. Effective January 31, 1949, the Railroad Company and the Collective Bargaining Agency of its employees in the skilled crafts entered into an agreement under which the antedated seniority given the reemployed veterans (plaintiffs herein) was revised so as to give to the reemployed veteran seniority as machinist helper as of the date on which the respective veteran first performed services as a regularly assigned machinist helper. Pursuant to this agreement, the seniority of the plaintiff Gregory as machinist helper was changed from July 3, 1942 to November 25, 1945; Charles Van Vactor from June 8, 1942 to November 19, 1945 and Casper Waters from July 20, 1942 to March 27, 1946.

The dates of seniority of plaintiffs as machinist helpers are the same as the dates to which the plaintiffs would have been entitled under the applicable collective bargaining agreements, if instead of being absent from the service of the Louisville

and Nashville Railroad Company for purposes of engaging in military service, they had been on leave of absence or on furlough.

The agreement of January 31, 1949 treated plaintiffs and other veterans as if they had been on leave of absence from the service of the Railroad Company during the period of their military service.

The Agreement of January 31, 1949 is as follows—

"Memorandum of Agreement Between Louisville & Nashville Railroad Company and Employes Represented By System Federation No. 91 of the Railway Employes Department of the American Federation of Labor.

"1.

"This Agreement is made necessary by the following facts and circumstances:—

"(A) In an agreement dated June 1, 1942, and known as the Fircmen and Oilers' Agreement, there is a provision governing the promotion of laborers subject to that agreement to positions in the skilled crafts. The provision referred to reads as follows:

" 'Employes covered by the Firemen and Oilers' Agreement will be given consideration for promotion to positions under the Shopmen's Skilled Agreement. Such promotions will be based on ability, merit and seniority—the Management to be the judge and no partiality to be shown.'

"(B) Since June 1, 1942, the Railroad Company acting under the provision of the Firemen and Oilers' Agreement quoted above, has from time to time promoted certain laborers to positions as helpers in the various skilled crafts.

"(C) During this same period certain laborers in the employ of the Railroad Company holding seniority only as laborers were inducted into, or volunteered for service in, the armed forces of the United States.

"(D) Section 8 of the Selective Training and Service Act of 1940, and other statutes supplementing this section, provided that any person inducted or volunteering for training and service in the armed forces, who in order to perform such training and service has left a position, other than a temporary position, in the employ of any employer, has satisfactorily completed his period of training and service, is still qualified to perform the duties of such position, and make application for reemployment within ninety days after such completion, shall be restored by the employer 'to such position or to a position of like seniority, status and pay, unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so.' It also provides that any person so restored 'shall be considered as having been on furlough or leave of absence during this period of training and service in the land or naval forces, shall be so restored without loss of seniority.' * * *

"(E) As the laborers referred to above as having been inducted into, or having volunteered for service in the armed forces of the United States, completed their various periods of training and service and were discharged, such of them as made timely application and were otherwise qualified as provided in Section 8 of the Selective Training and Service Act, were restored by the Railroad Company to their positions. Wherever laborers junior to these returned veterans in point of laborers' seniority had been promoted to helpers' positions during the veterans' periods of service in the armed forces, certain of the veterans were promoted to helpers' positions upon their return and were given a seniority date as a helper just ahead of the first nonveteran junior to himself in point of laborer's seniority who had been promoted during the veteran's absence. This resulted in returned veterans holding seniority as helpers as of dates when these veterans had never actually worked as helpers and were not in the active service of the Railroad Company.

"(F) The government agency in charge of the administration of the Selective Training and Service Act, was during the times mentioned contending that Section 8 of that Act required that returned veterans be given this special preference, and certain of the lower Federal Courts had so held. The parties hereto accepted this interpretation of the Selective Training and Service Act and acted as they supposed in accordance with their duties under that statute.

"(G) The seniority dating given to returned veterans, as described above has led to serious dissatisfaction on the part of other employes of the Railroad Company who were actually promoted to helpers' positions and who were working as helpers before the veterans were promoted, but whose seniority dates as helpers are later than those granted to the veterans. Certain of these employes have brought suit in the United States District Court against the Railroad Company and certain of the organizations affiliated with the Federation, and the court has decided in its opinion that Section 8 of the Selective Training and Service Act does not entitle veterans to the seniority preference which was given them, and the attention of the parties hereto has been directed to other recent decisions by other United States Courts which are in accord with this opinion.

"2.

"Because of the foregoing, the parties hereto believe that in order to bring the practice as to the seniority dates of returned veterans into conformity with the provisions of the Selective Training and Service Act, and in order to adjust existing disputes as to the propriety of the special preference granted to such veterans in the past, and in order to prevent further serious controversy on this subject in the future, it is necessary that an agreement be made between them readjusting the seniority dates of returned veterans now in the employ of the Railroad Company as helpers in the skilled crafts.

"3.

"It is, therefore, agreed that in each instance where a veteran held seniority only as a laborer in the unskilled craft at the time of his induction or enlistment in the armed forces of the United States and has been promoted to a position of helper, his seniority as helper shall date from the day when he first performed services as a regularly assigned helper after returning from the armed forces.

"4.

"As soon as reasonably possible, the Railroad Company will prepare and post a revised seniority roster showing the seniority dates and rankings of all shop craft employes corrected according to the terms of this agreement.

"In the readjustment of seniority as provided in the foregoing, should any employe be affected to the extent he is furloughed as helper his position will be bulletined and filled in accordance with Rule 17(a) of the controlling agreement.

"Accepted for the Employes:

/s/ M. F. Leahy
International Association of Machinists

J. D. Hall
International Brotherhood of Boilermakers, Iron Ship Builders and Helpers of America

J. Hugh Whelchel
Sheet Metal Workers International Association

T. H. Patterson
International Brotherhood of Electrical Workers

W. O. Poteet
Brotherhood Railway Carmen of America

T. H. Patterson
Secretary, System Federation No. 91

M. P. Leahy
President, System Federation No. 91

Accepted for the Louisville & Nashville Railroad Company

C. J. Bodemer
Supt. of Machinery
Approved:

G. C. Howard
Director of Personnel

"Signed at Louisville, Kentucky, this 31st day of January 1949."

## Conclusions of Law.

■ I. It is the contention of the plaintiffs that Section 308(c) of the Selective Training and Service Act entitled plaintiffs to the retroactive seniority rating which the contract of January 1949 abrogated. That Section of the Act is as follows—"(c) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) shall be considered as having been on furlough or leave of absence during his period of training and service in the land or naval forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration."

In Aeronautical Industrial District Lodge 727 v. Campbell, 337 U.S. 521, 69 S.Ct. 1287, 93 L.Ed. 1513, Kirk, an employee of Lockheed Aircraft Corporation, while in military service and through a contract negotiated by the recognized collective bargaining agent of the employes of Lockheed, was laid off in accordance with the seniority roster while a Union Chairman junior to Kirk was retained in employment. Kirk sued for compensation during the period of his layoff and the Supreme Court reversed a judgment of the District Court and the Court of Appeals of the Ninth Circuit granting Kirk the recovery. 169 F.2d 252. The Supreme Court, construing Section 308 of the Act held that so far as veterans were affected, disregard of the length of employment was not forbidden. The Supreme Court said, 337 U.S. page 526, 69 S.Ct. page 1290.

"In providing that a veteran shall be restored to the position he had before he entered the military service 'without loss of seniority,' § 8 of the Act uses the term 'seniority' without definition. It is thus apparent that Congress was not creating a system of seniority but recognizing its operation as part of the process of collective bargaining. We must therefore look to the conventional uses of the seniority system in the process of collective bargaining in order to determine the rights of seniority which the Selective Service Act guaranteed the veteran.

"Barring legislation not here involved, seniority rights derive their scope and significance from union contracts, confined as they almost exclusively are to unionized industry. * * *

"To draw from the Selective Service Act an implication that date of employment is the inflexible basis for determining seniority rights as reflected in layoffs is to ignore a vast body of long-established controlling practices in the process of collective bargaining of which the seniority system to which that Act refers is a part."

The Court of Appeals of this Circuit, in Brown v. Watt Car & Wheel Company, 182 F.2d 570, 572, has defined seniority as follows—"The conventional concept of seniority is that it consists of a relative position among all employees within a specified job group, determined by length of service with the employer, conferring upon those having such seniority certain priorities with respect to jobs, promotions, lay-offs and other such matters as provided by the contract between the employer and the Union. But such rights on the part of the employee come from the union contract not from seniority. Seniority deals with the priority among employees in taking advantage of such rights under the contract as become available in the operation of the industrial unit."

The Court further said, upon authority of Fishgold v. Sullivan Drydock and Repair Corporation, 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110, and Aeronautical Lodge et al. v. Campbell, supra,—"* * * Congress in its use of the phrase 'without loss of seniority' was not creating a system of seniority but was using the term in its conventional concept."

■ II. Seniority acquired by the plaintiffs as laborers could not be counted as seniority on the machinist helper seniority roster prior to plaintiffs' actual promotion to positions as helpers. Seniority in one class does not constitute seniority

in another. Boston & M. R. R. v. Davis, 1 Cir., 167 F.2d 722.

A great presumption or strong probability that plaintiffs would have been promoted had they remained at their work during the period of their military service does not entitle them to seniority in the promoted position. Delozier v. Thompson, 335 U.S. 886, 69 S.Ct. 238, 93 L.Ed. 424; Raulins v. Memphis Union Station Company, 6 Cir., 168 F.2d 466; Harvey v. Braniff International Airways, 5 Cir., 164 F.2d 521.

III. The contract between System Federation 91 and the Railroad Company effective January 31st, 1949, served only to correct the mistake which the parties to that agreement had made in granting to the veterans priority as machinist helpers prior in date to the day on which their actual promotion occurred and on which they began work as helpers. Aeronautical Lodge et al. v. Campbell, supra; Freeman v. General Motors, Corp., D.C., E.D. Mich., 86 F.Supp. 527.

It is therefore concluded that plaintiffs are not entitled to the relief sought in the petition and a judgment will be tendered by Counsel for defendants dismissing the petition.